**Maria LEVKA, Plaintiff,**

v.

**CITY OF CHICAGO, Defendant.**

**No. 83 C 2283.**

United States District Court, N.D. Illinois, E.D.

March 27, 1985.

David J. Letvin, Letvin & Stein, Chicago, for plaintiff.

James D. Montgomery, Corp. Counsel of City of Chicago, Sharon M. Sullivan, Asst. Corp. Counsel, Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

■ Maria Levka ("Levka") moves for an award of attorneys' fees for her law-

yers' services on the appeal in this strip search case against the City of Chicago (the "City"). For the reasons stated in this memorandum opinion and order, her motion is denied.

Because the City had admitted the police strip search of Levka had violated her constitutional rights, the jury trial in this Court was limited to damages. From the evidence and the closing argument of Levka's lawyers, the jury was persuaded to award her $50,000. Though this Court viewed that judgment as substantially higher than it would have awarded had it been the trier of fact in a bench trial, its respect for the jury function led it to deny the City's post-trial motions. But our Court of Appeals disagreed and ordered Levka to accept a remittitur reducing the judgment to $25,000 or alternatively to try the case anew (of course the appeal, like the trial, had been limited to the damage issue). 748 F.2d 421 (7th Cir.1984).[1]

This Court originally awarded, and Levka has already been paid, $24,475 for her lawyers' fees at the trial stage. *Roe v. City of Chicago*, 586 F.Supp. 513 (N.D.Ill. 1984) (this Court published that opinion under the "Roe" pseudonym because Levka's counsel had asked that this Court's criticisms of their fee request of nearly twice that amount should not be ascribed to them publicly). No appeal was taken from that award by either litigant.

■ Now Levka urges her lawyers should be compensated for their work on the City's appeal on the theory she was "the prevailing party in the litigation as a whole" (Pl.Mem. 1). But the myth of the philosopher's stone—of transmuting base metal into gold—has long since been exploded. Levka has been paid in full—or more [2]—for the fact her lawyers prevailed

1. Levka has since accepted the remittitur. Though the Court of Appeals' opinion had provided Circuit Rule 18 should apply on remand, the parties have stipulated (as the Circuit Rule permits) that this Court should retain the case to decide the fees question.

2. As this Court's original opinion on fees made plain, the case was overtried. *Roe*, 586 F.Supp. at 517 reflected this Court's "deep conviction" that the fee award, even after appropriate reductions, was "greatly excessive." One of the factors producing the $24,475 figure was its "reasonable relationship" (*id.* at 517 n. 9), respon-

for her in the trial court to the tune of the original $50,000 verdict. No matter how Levka slices it, she is worse off now, *after* the appeal, than *before* it. For that obvious reason this Court rejects the notion she is the "prevailing party" *on the appeal.* And that—not whether she prevailed "in the litigation as a whole"—is the issue now.

In an effort to make the worse cause appear the better, Levka's counsel cite cases that purportedly support her position. None does. Not one deals with a situation like this one in which (1) the civil rights plaintiff has been fully paid for services in the trial court, (2) only a single issue—the same single issue involved in the trial[3]—was presented on appeal and (3) plaintiff *lost* the appeal.[4]

*Buian v. Baughard,* 687 F.2d 859 (6th Cir.1982) is a square precedent supporting the disallowance of Levka's fees on the appeal. Levka's R.Mem. 1–3 seeks to distinguish *Buian* by relying on the portion of the Sixth Circuit's analysis that pointed to the fact a fee allowance under 42 U.S.C. § 1988 ("Section 1988") is stated to be as part of "costs," and the losing plaintiff on the appeal there had costs awarded *against* it (as did Levka in our Court of Appeals). Levka urges our Court of Appeals' reversal in *Chesny v. Marek,* 720 F.2d 474 (7th

Cir.1983) of this Court's decision, 547 F.Supp. 542 (N.D.Ill.1982) undercuts that analysis. It remains to be seen whether *Chesney*'s reversal survives in the Supreme Court (where it has been argued and is now awaiting decision). But even if it does (which this Court continues to doubt), the fact that "costs" would then have a different meaning in Section 1988 and in Fed.R.Civ.P. 68 would not control the very different question in this case. Not only the literal language of Section 1988[5] but the Supreme Court's teaching in *Hutto v. Finney,* 437 U.S. 678, 693–98, 98 S.Ct. 2565, 2574–77, 57 L.Ed.2d 522 (1978) tell us an attorneys' fee award *under that section* is part of costs, and Levka was certainly the loser, not entitled to costs, on the appeal in this case.

None of the Seventh Circuit cases on which Levka purports to rely leads to a different result. In fact *Bonner v. Coughlin,* 657 F.2d 931, 935–36 (7th Cir.1981) and (albeit less directly) such cases as *Muscare v. Quinn,* 680 F.2d 42 (7th Cir.1982) *specifically* confirm the analysis and commonsense result reached in this opinion.

Levka's lawyers have now received fees almost exactly equal to Levka's still-substantial damages award. Whether they would have recovered that much for services at trial had the initial jury verdict been

---

sive to the admonition in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), to the jury verdict.

**3.** Here that issue was Levka's damages, for the City had conceded liability.

**4.** This opinion will not be extended by a parsing of the authorities Levka cites, for a simple reading of each of those cases demonstrates its inapplicability. It may however be worth observing that Levka's most extended reliance on and quotation of the "correct rule," citing to the extended litigation in *Vaughn v. Westinghouse Electric Corp.,* is disingenuous. There a prevailing employment discrimination plaintiff in the District Court, 471 F.Supp. 281 (E.D.Ark.1979), also won on appeal to the Court of Appeals, 620 F.2d 655 (8th Cir.1980). On petition for certiorari the Supreme Court (450 U.S. 972, 101 S.Ct. 1504, 67 L.Ed.2d 808 (1981)) simply vacated and remanded the case for reconsideration in light of *Texas Department of Community Affairs v. Burdine,*

450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), which had been decided just a few days earlier. On remand the District Court again ruled for plaintiff, 523 F.Supp. 368 (E.D.Ark. 1981), and then refused to separate out and deny compensation for the services of plaintiff's lawyers in the Supreme Court, 526 F.Supp. 1165, 1169 (E.D.Ark.1981). Fairly viewed, the *Vaughn* plaintiff was the "prevailing party" throughout. On the merits the Supreme Court action was entirely neutral, not in defendant's favor. Its remand order was simply an incidental waystation on the route to a reaffirmance of plaintiff's position as the "prevailing party."

**5.** Section 1988 reads (emphasis added):

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee *as part of the costs.*

$25,000 is an issue they fortunately need not face.[6] Their claim for more fees *now* remains base metal, not gold. Levka's motion, which poses the sole remaining issue in the case, is denied.

---

**6.** Initially this Court rejected the efforts of Levka's counsel to recover attorneys' fees that nearly matched dollar-for-dollar Levka's recovery (as *Roe*, 586 F.Supp. at 514 reflects, the original fees request was for nearly $48,000, though *Roe* mistakenly listed the jury verdict as $60,000 rather than $50,000). Now matters have come full circle, and Levka's lawyers have in fact received almost exactly what Levka herself has ultimately recovered. Though the current motion is nominally Levka's, it is plainly for no one's benefit except that of the lawyers, who originally received the case from the Roger Baldwin Foundation of the ACLU. When this Court was in the active practice of law, its involvement as an ACLU "cooperating lawyer" and in myriad other volunteer activities was in fact pro bono publico, not pro bono advocatus. This Court is advised that the ACLU's identification of available counsel to plaintiffs (such as Levka) in the many strip search cases was made on a different understanding from the normal "cooperating lawyer" referrals (that is, the lawyers did not initially agree to act pro bono publico), but that does not change the result here. If Levka's lawyers must bear some expenditure of time without being compensated, it is because they are not entitled to be paid for losing—and they can view themselves as (perhaps involuntarily) serving the best pro bono traditions.