**Maceo WILLIS, Plaintiff,**

v.

**Ernest BELL, et al.,[1] Defendants.**

**No. 86 C 9589.**

United States District Court,
N.D. Illinois, E.D.

Jan. 31, 1992.

---

**1.** Although all claims against first-named defendant Ernest Bell were dismissed during the course of the litigation, this opinion adheres to the original case caption.

## MEMORANDUM OPINION
## AND ORDER

SHADUR, District Judge.

This case is now on appeal from a jury verdict in which nominal damages of $1 were awarded to plaintiff Maceo Willis ("Willis") for a violation of his constitutional rights—a matter on which this Court had earlier ruled in Willis' favor on a motion for summary judgment as to liability (726 F.Supp. 1118 (N.D.Ill.1989)). As in every civil rights action in which a plaintiff has prevailed in whole or in part under 42 U.S.C. § 1983 ("Section 1983"), this final chapter involves the determination of attorneys' fees awardable under 42 U.S.C. § 1988 ("Section 1988"). This opinion will not rehearse all that has gone before in this bitterly fought litigation, limiting itself instead to what is essential to resolution of the fee dispute.

### *Positions of the Parties*

■ Appointed counsel for Willis have—just as they did in the course of their high-quality work on the merits in representing their client—performed an extraordinary task in paring their fee petition (the "Petition") to an absolute minimum so as to be invulnerable to attack in any of the respects in which such requests are frequently suspect. Although the requested base award of $105,399.50 (exclusive of the appropriate adjustment for the time value of money) that covers counsel's work through August 31, 1991, plus $6,136 for their prep-

aration of the fee Petition and briefing on that subject, would seem large if viewed in a vacuum [2]—and although the ultimate result that counsel obtained for Willis was an award of just nominal damages—the only objective conclusion must be that the Petition is a modest and unexceptionable one (subject only to the determination of the legal questions that are addressed in this opinion).

Indeed, the Petition and Motion for an Award of Attorneys' Fees is truly a model of its kind, reflecting the most meticulous attention to all the relevant standards. Its approach to the lodestar calculation reflected a reduction in hours that, if anything, understated the time actually chargeable in the area as to which Willis was the "prevailing party" for Section 1988 purposes—the Petition must be read to appreciate the care and attention that went into its preparation. And its hourly rates for all three lawyers involved (lead counsel Jeffrey Schiller, his principal associate Michael Braun and supervising partner Robert Case) are well within the reasonable range for lawyers of such experience and skill (indeed, a billing at higher hourly rates would not be out of line in market terms). Finally, though the few hours devoted by two summer associates have been included at rates somewhat above what this Court has approved in other cases for persons who do lawyer-type work but who are not yet admitted to the bar, those rates too are supported by the expert opinion of Jenner & Block partner Michael Brohman—and they too were not objected to by defendant City of Chicago ("City").[3]

In sum, the lodestar figure (the product of hours times hourly rates) was eminently reasonable. Its reasonableness, a decision independently reached by this Court, is reinforced by City's frank acknowledgement in its responsive Mem. 1 (footnote omitted) and 5:

> City does not object to the award of attorney's fees in the amount of $60,-374.50 for those hours expended up to

---

2. See Appendix.

3. Those hours represented less than 7% of the total time spent and less than 4% of the total dollar charges reflected in the Petition.

award of summary judgment and for post trial review of the decision in *County of Riverside v. McLaughlin* [— U.S. ——, .111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) ] and the preparation of the bill of costs. Furthermore, City does not object to the billing rates of any of the attorneys involved. City does not object to any of the attorney's fees sought prior to the award of summary judgment to plaintiff and including fees sought for the preparation of the bill of costs and the fee petition as these are reasonable.[4]

\* \* \*

City has no objection to the hourly rates of the attorneys involved. Nor is there any objection to the method of calculating the amount of fees sought for which plaintiff relies on *Hensley [v. Eckerhart]*, 461 U.S. [424] at 434 [103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)]. (Plaintiff's memorandum, p. 8).

City has no objection to an adjustment for the delay in collecting fees by the method the Court prefers. (Plaintiff's memorandum, p. 8–9).

And the same is true as to counsel's supplemental application for $6,136, on which the opposing sets of lawyers reached a commendable compromise agreement and thus avoided any wasteful fees-on-fees contest (once again the Supplemental Petition should simply be read for its lucid explanation of the cutback that it reflected and the nature of the parties' agreement).

Initially City objected only in these terms (City Mem. 2):

While plaintiff prevailed in this litigation by receiving a summary judgment, subsequent to the entry of that judgment, extensive legal services were performed in connection with a trial which failed to alter the legal relationship between the parties.... Because plaintiff only partially prevailed, City objects to award of attorney's fees after the award of summary judgment in the amount of $45,025 relating to all trial work.

That objection was based on its contention that the efforts of Willis' lawyers could be carved up into slices based on the different stages of the litigation involved. Ultimately City backed away from its original partial approval, relying on *Estate of Farrar v. Cain*, 941 F.2d 1311 (5th Cir.1991) to object to *any* fee award at all.

### Application of the Relevant Standards

In light of the manner in which counsel have distilled the issues so that this case poses only narrow areas of controversy, this Court need not go through the primer on fee award principles that is so often necessary in the judicial treatment of Section 1988 cases. Apart from City's *Farrar*-inspired opposition to the award of even $1 in fees, it is necessary only to focus on its contention that plaintiff failed completely on the only issue at trial against City and hence was not a "prevailing party" under Section 1988.

▪ It takes only a brief analysis to recognize the legal poverty of that argument. When this Court granted summary judgment in Willis' favor as to *liability* on one of his claims (the only one on which he ultimately prevailed, and the only one for which his appointed counsel have therefore sought a fee award—they have leaned over backward to separate out and exclude all time devoted to the rest of the case), he had nothing that he could enforce. There was no *judgment* in his favor. Quite apart from the possibility that this Court might change its view before the time for such a final judgment would actually arrive,[5] Wil-

---

**4.** [Footnote by this Court] That was City's original position. As discussed later in this opinion, it later retreated from that partial approval—but on an issue of law, *not* a quarrel as to the hours spent or the hourly rates.

**5.** Usually any such prospect represents nothing more than a theoretical illustration of the basic principle that only a final judgment establishes the jural relationship between the parties, with interim orders of the court always being open to revision until then. In this instance, though, the potential for the entry of a different judgment was very real and not merely hypothetical: After the trial this Court requested the parties to brief the impact of the intervening Supreme Court decision in *County of Riverside v. McLaughlin*, —— U.S. ——, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Indeed City itself made that very point about earlier nonfinality at page 3 of its Memorandum in response to that request by

lis and his counsel *had* to proceed to trial in order to obtain any enforceable relief. If City wanted to stop the bleeding—to avoid any further accrual of liability for fees—it could have made a Fed.R.Civ.P. ("Rule") 68 offer (as was done in *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), ultimately upholding the decision on that score by this Court, 547 F.Supp. 542, 545–48 (N.D.Ill.1982), after it had been reversed in that respect by our Court of Appeals, 720 F.2d 474 (7th Cir.1983)).

To be sure, any such Rule 68 offer carries the "risk" that it may be accepted—and that acceptance would have meant City's giving up its right to appeal this Court's ruling of liability.[6] But having chosen not to make any such offer, and thus having forced Willis to go the full trial route before he could become a "prevailing party" in the legal sense, City cannot in good conscience make an argument that the services that it now disputes were not an essential and integral part of Willis' attainment of such "prevailing party" status.[7]

City can invoke only a distorted reading of the controlling cases—*Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76

L.Ed.2d 40 (1983) and *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)—in support of its insupportable position. Those cases' references (1) to cutting away the time spent on unsuccessful discrete claims from a Section 1988 fee award (*Hensley*) and (2) to requiring a change in the legal relationship of the parties as a precondition to prevailing party status (*Garland*) cannot reasonably be made to do the job for City. Nor is City assisted at all by its citation to this Court's opinion in *Levka v. City of Chicago*, 605 F.Supp. 197, 199 (N.D.Ill.1985), which is also wholly beside the mark, entirely inapplicable to the situation that was presented in this case.[8]

That leaves only *Farrar*, on which City originally relied for its untenable bifurcated approach and on which it now relies for its argument that Willis' Petition should be denied in its entirety. That is indeed an accurate reading of *Farrar*—but this Court will leave that maverick decision back in Texas, where it came from and where it belongs. *Farrar*, 941 F.2d at 1316 acknowledges that it stands alone for its position, in conflict with fully six other Courts

---

this Court. And this Court agreed with City's argument that the *County of Riverside* ruling had to be considered in this case precisely because there had been *no* final judgment entered here before the issuance of the Supreme Court's decision in that case.

**6.** That prospect, however, was not an inevitable one. It is entirely possible that the exercise of some ingenuity in City's presentation and discussion of a Rule 68 offer could have preserved City's right of appeal while at the same time limiting its exposure on further fees related to the issue on which partial summary judgment had been entered. That however would have involved a negotiated without-prejudice arrangement, requiring agreement on both sides, so that this opinion does not in any way rely on any such possibility.

**7.** In effect the kind of argument that City now advances would really undercut Rule 68 by creating a kind of judicial oneway variant on that Rule. Defendants would then be able to avoid actually making an offer of judgment, while still gaining the benefit of cutting off all future accrual of awardable fees.

**8.** *Levka* rejected a Section 1988 award for services rendered in the appellate phase of that

case. There the appeal had ended in plaintiff's being *worse* off than before, because the Court of Appeals had ordered a remittitur halving plaintiff Levka's damage award. Willis' R.Mem. 7 n. 5 correctly points out that extending such a holding to the present situation would be analogous to treating a prevailing plaintiff who is successful in obtaining an *affirmance* on appeal (and who thus does not *improve* his or her position but simply stands still—no better and no worse off, but having had to work hard in order to maintain that status quo) as not being a "prevailing party" on the appeal—for to paraphrase City's argument about Willis here in terms of that conceptually comparable situation (its Mem. 3):

> To the contrary, plaintiff is arguably worse off after the expenditure of time, effort and money during the course of the [appeal, which though it resulted in affirmance did not *improve* plaintiff's recovery beyond the level obtained at the district court level]. Therefore, plaintiff was only a partially prevailing party for purposes of 42 U.S.C. § 1988 ("section 1988"). Plaintiff should be denied fees sought relating to all [appellate] work.

of Appeals including our own.[9] No one in the position of this Court can responsibly accept *Farrar*'s invitation.

### Conclusion

City's all-out war on Willis' Petition is rejected. Its effort to carve the Petition into segments is also unpersuasive. This Court approves the Petition in its entirety, including the adjustment for delay by applying the weighted prime rate of interest to the lawyers' and paralegals' historical hourly rates (see *Fleming v. County of Kane*, 898 F.2d 553, 564–65 (7th Cir.1990) and the Appendix to this Court's opinion in *Lippo v. Mobil Oil Corp.*, 692 F.Supp. 826, 838–43 (N.D.Ill.1988)).[10] Willis' counsel are ordered to submit, by a filing in this Court's chambers (with a copy of course to City's counsel) on or before February 3, 1992, their calculation of the total amount of the award (including such interest) to be entered as of February 10, 1992. City's counsel are then ordered to apprise this Court and Willis' counsel of their agreement or disagreement with that calculation not later than the morning of February 7, to enable this Court to enter the order on the February 10 date.

### Appendix

Early in the text of this opinion this Court remarked that the amount of Willis' fee Petition "would seem large if viewed in a vacuum." And it is certainly true that the operation of Section 1988 in a hotly contested lawsuit frequently produces a fee petition that is disproportionate in amount to the substantive claim. Indeed, it seems a fair guess that *Farrar*, the Fifth Circuit maverick that this Court has declined to follow, was in substantial part a reaction to the contrast between the nominal damages award of $1 and the fees and expenses of more than $300,000 that the trial court had awarded there.

But given the nature of Section 1988 and the case law applying it, the approach to litigation that this Court and its colleagues regularly encounter from state actor defendants in Section 1983 lawsuits (or from the lawyers for those defendants) is frequently itself the direct cause of such a disparity in amounts. All too often the attitude of the public officials is one of "Millions for defence, but not one cent for tribute"[1] applied with a vengeance. Any business executive who managed his or her company's litigation docket in the same manner would likely be fired, and with good reason.

Lest that seem to be an overly critical view, some further explanation is in order. Time and again this Court has seen the opportunity for nominal or modest settlements in Section 1983 cases rejected by a public law office—that of the Attorney General, Cook County State's Attorney or City of Chicago Corporation Counsel—because the client or the law office has refused to authorize them. Sometimes such a decision is based on a floodgates-type concern (that is, the belief that too much readiness to make even a small payment in settlement of a frivolous or near-frivolous claim by (say) a prison inmate may stimulate other like claims by other inmates[2]),

---

**9.** *Farrar, id.* at 1316 n. 22 footnotes its text statement to that effect with citations from five other Courts of Appeals—but *not* from the Seventh Circuit. That happens again in a later listing, *id.* at 1317 n. 26. It seems to appear from the next footnote (*id.* n. 27) that *Farrar* was referring, in listing our Court of Appeals as having come down on the opposite side of the issue, to the dictum in *Smith v. DeBartoli*, 769 F.2d 451 (7th Cir.1985), which had in turn been relied on by the Eighth Circuit in expressly reaching the opposite conclusion from that later arrived at in *Farrar*. But all this is of no moment—what is plain in all events is that *Farrar* is an outlier.

**10.** *Fleming* was thereafter settled by the parties before this Court had the opportunity to explain on remand its reasons for applying the weighted prime rate, a concept that it had already spelled out in detail in its *Lippo* Appendix.

**1.** Said by Charles Cotesworth Pinckney when he was our Minister to the French Republic in 1797.

**2.** One of the facts of life in civil rights litigation is that pro se plaintiffs usually have nothing to lose. They do not run the risk of paying any litigation expense: Their financial indigence entitles them to proceed in forma pauperis without paying a filing fee; once they pass the threshold requirement of substantial nonfrivolousness of their claims, the appointment of a lawyer to represent them on a pro bono basis

and that is certainly a legitimate consideration.[3] But far more frequently what is at work is simple intransigence (the unwillingness to adopt a realistic economic analysis), or even a total lack of understanding of what such a realistic analysis requires.

Litigation readily lends itself to a market value approach. Whether plaintiff or defendant, each litigant can and should make an effort to evaluate the potential recovery by plaintiff if wholly successful and then to discount that in terms of plaintiff's probability or improbability of success. Although the parties may differ in their respective appraisals of those factors,[4] the objectively discounted value defines the range within which (if not the precise number at which) each side is better advised to settle than to take the all-or-nothing risk of pursuing the litigation to judgment. And where Section 1988 or other fee-shifting provisions are involved, the fees that would be payable to the successful plaintiffs' lawyers must be included as part of the potential recovery to which the appropriate probability discount should be applied by defendants in evaluating the lawsuits.

It is hard to believe that this action could not have been settled much earlier—before all the time spent by Willis' lawyers had to be piled up as it was—at a figure far, far below the amount now at risk (which is the sum of the nominal $1 in damages plus the large fee award that has been dealt with in this opinion). And whatever the outcome of the pending appeal on the merits may be, it is unquestionable that at the time that this case was potentially subject to an early settlement the then-controlling decision in *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) gave a high percentage of likelihood to Willis' chances of prevailing on his claim that his constitutional rights had been violated when he was not promptly taken before an impartial magistrate.

This Court of course has no direct knowledge of the opportunities that may or may not have existed for such settlement, or as to whether either or both sides demonstrated intransigence in that respect. But what *is* certain is that the mere disparity between the nominal damage award and the amount of the fee petition, large though it is, should not alone be the predicate for disallowance of the requested fees here.

---

(something that usually benefits the court and opposing counsel as well as the indigent plaintiff, because it produces far more manageable litigation for everyone concerned) creates no financial obligation for the plaintiff; and the potential for a Section 1988 award in favor of the defendant is not a meaningful threat if the impecunious plaintiff loses.

3. Even that consideration tends to be given too much weight, however. Another one of the facts of life in terms of prisoners' lawsuits is that the inmate population has more than enough time to think about and work on, and then file, litigation. It seems doubtful (given the flow of such litigation into this and every other District Court) that any perceived added incentive for such filings, based on the noising about via the prison grapevine of some settlements in the most meritorious of such lawsuits, would make a meaningful difference in the volume of filings.

4. In this Court's experience, knowledgeable lawyers are seldom far apart in their estimates of what a plaintiff would recover on a best-case basis (or its equivalent, on a worst-case basis from defendant's point of view). Usually though not always the lawyers will differ primarily in how they figure the chances of ultimate success in the lawsuit—whether 50–50 or with a tilt in plaintiff's or defendant's favor. Whether that latter type of difference stems from the lack of perspective created by the advocates' combative stance or otherwise, a judge's participation in the process of settlement negotiations typically involves trying to persuade the parties that an objective evaluation calls for different numbers than those they have respectively arrived at on their own, thus narrowing or eliminating the gap between the parties. This entire process is something that our District Court's distinguished Senior Judge Hubert Will has dubbed the "Lloyds of London approach," reflecting the sensible analogy that an appropriate guide to settlement is what an objective insurer would charge as a premium for insuring a defendant against liability in the lawsuit, reflecting an evaluation of the risk but eliminating any element of profit for the insurer.