Maceo G. WILLIS, Jr., Plaintiff–Appellee,

v.

CITY OF CHICAGO, Defendant–Appellant.

Nos. 91–2528, 92–1592.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 10, 1992.

Decided July 30, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 23, 1993.

Robert O. Case, Walsh, Case, Coale & Brown, Jeffrey E. Schiller (argued), Michael F. Braun, Schuyler, Roche & Zwirner, Chicago, IL, for plaintiff-appellee.

Lawrence Rosenthal, Deputy Corp. Counsel (argued), Frederick S. Rhine and Kelly R. Welsh, Asst. Corp. Counsel, Benna R. Solomon, Office of Corp. Counsel, Appeals Div., Chicago, IL, for defendant-appellant.

Before POSNER and RIPPLE, Circuit Judges, and CRABB, Chief District Judge.*

RIPPLE, Circuit Judge.

Maceo Willis, Jr. was arrested on charges of sexual assault. Pursuant to Chicago Police Department policy, Mr. Willis was held for an extended period of time without a judicial determination of probable cause so that the police could investigate other crimes that they suspected Mr. Willis had committed. Mr. Willis brought this action against the City of Chicago. He alleged that his constitutional rights had been violated by the City's extended detention policy. The district court granted summary judgment to Mr. Willis and then determined that he was a "prevailing party" under 42 U.S.C. § 1988 and ordered the City to pay Mr. Willis' attorneys' fees. The City of Chicago now appeals from both determinations of the district court. We affirm in part and reverse in part.

## I

## BACKGROUND

### A. *Facts*

On the morning of February 11, 1985, Chicago police officers arrived at Mr. Willis' place of employment and met with Mr. Willis in the personnel office. Based on witness information and a computerized crime pattern analysis, the officers suspected him in connection with a series of aggravated sexual assaults. Although they did not have a warrant for Mr. Willis' arrest, the officers convinced him to return with them to Area 3 Violent Crimes Police Headquarters (Area 3). On the way to the police station, one of the officers advised Mr. Willis of his rights and, once they neared their destination, the officer placed Mr. Willis in handcuffs.

The officers and Mr. Willis reached Area 3 at approximately 11:00 a.m. and the officers began to question him regarding the assaults and to telephone victims to arrange for them to view him in a lineup. During this time, other police units were contacted, including Area 2 Violent Crimes Headquarters (Area 2), so that the police could determine whether Mr. Willis was a suspect in any other crimes. From approximately 4:00 p.m. to 7:00 p.m., Mr. Willis participated in a series of lineups at Area 3. He was identified by numerous witnesses as having committed several acts of aggravated criminal sexual assault. Supported by these identifications, the Assistant State's Attorney approved filing charges against Mr. Willis. Meanwhile, police officers in Area 2 had determined that Mr. Willis fit the description of a perpetrator

---

* The Honorable Barbara B. Crabb, of the Western District of Wisconsin, is sitting by designation.

of a series of sexual assaults in that section of the city. At approximately 11:00 p.m., Mr. Willis was taken to the District 9 police station lockup. The processing of charges against him was completed at 4:15 a.m. on February 12, 1992, when the results of a fingerprint check were received by the station.

Because February 12 was Lincoln's Birthday, a special holiday court schedule was in effect. The felony court call for arrestees to appear in. front of a neutral judicial officer was scheduled for 9:30 a.m. that morning. Although Mr. Willis had already been booked on the charges arising out of the Area 3 police investigation, he was not taken to that court call for a probable cause determination because he was considered a suspect in the additional Area 2 crimes. The police wished to conduct additional investigations into the Area 2 crimes.

In the early afternoon of that same day, Mr. Willis was transported to Area 2 for lineups relating to the assaults in which Area 2 police considered him a suspect. . Because the police, however, were unable to find other men similar in appearance to Mr. Willis, the lineups. were not conducted. A victim of one of the crimes was instead shown a photo array that included a picture of Mr. Willis; the victim was unable to make a positive identification. No arrest. warrant was ever issued against Mr. Willis for any of the Area 2 crimes, and he was never charged with any of those crimes.

On February 13, at approximately 9:30 a.m., Mr. Willis was taken before a neutral judicial officer for a bail hearing. Bail was set at three hundred thousand dollars, which Mr. Willis was unable to post. Later that same day, he was indicted by a grand jury on four counts of aggravated criminal sexual assault.

At the time of Mr. Willis' arrest, the Chicago Police Department's general policy relating to the processing of arrestees was set forth in General Order 78–1. It was the Department's policy to bring arrestees to the first available court call after completion of processing. There were, however, established exceptions to this general rule. Paragraph C–2(a) stated that

> [i]n the event Criminal Investigation Division personnel ascertain that there is a necessity for the detention of an arrestee for a period of time longer than that which might routinely be expected, in order that they may continue the investigation, a request for such detention will be made by the unit commanding officer or the area coordinator to the watch commander of the facility where the arrestee is detained..

R.90, Ex.26 at 9. The City acknowledges that Mr. Willis was held past the February 12 holiday court call pursuant to this extended detention policy so that Mr. Willis' possible involvement in the Area 2 crimes could be investigated.

### B. *District Court Proceedings*

On December 10, 1986, Mr. Willis filed a complaint against the City and various police officers, alleging numerous constitutional violations and state law claims. Ultimately, however, Mr. Willis' suit consisted of two issues: (1) whether the City violated his Fourth Amendment[1] rights by detaining him for an undue length of time pursuant to an extended detention policy and prior to receiving a judicial probable cause hearing and (2) whether two of the City's police officers had denied him food and the use of a bathroom during a twelve-hour period of his detention.[2] Mr. Willis and the City filed motions for summary judgment on the extended detention issue and the district court granted summary judgment to Mr. Willis. Basing its decision on *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the court held that, on its face and as applied, the City's detention policy violated Mr. Willis' Fourth Amendment right to a prompt judi-

---

1. Our opinion will refer throughout to the Fourth Amendment rather than to the Fourth and Fourteenth Amendments. Although this is technically imprecise because the Fourth Amendment by itself applies to federal and not state or municipal actors, we shall continue a conventional and convenient practice. *See Marshall v. Allen,* 984 F.2d 787, 789 n. 1 (7th Cir.1993).

2. The jury found for defendants on this claim and the resolution of this issue is not in contention on this appeal.

cial determination of probable cause. *Willis v. Bell,* 726 F.Supp. 1118, 1124 (N.D.Ill.1989). The claim regarding the conditions of Mr. Willis' detention was then submitted to a jury.

On May 10, 1991, a jury found in favor of the defendant police officers regarding the conditions of detention. The jury also awarded nominal damages of one dollar (the minimum amount it could award) to Mr. Willis for the unconstitutional length of detention. Three days later, the Supreme Court decided *County of Riverside v. McLaughlin,* —— U.S. ——, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), in which the Court gave guidance for determining when a delay in receiving a *Gerstein* probable cause hearing is unconstitutional. The City filed a motion to vacate judgment based on the rationale in *McLaughlin,* but the district court concluded that the Supreme Court's decision did not support the extended detention policy and thus *McLaughlin* did not change the outcome of Mr. Willis' case.

Subsequently, Mr. Willis contended that he was a "prevailing party" as defined under 42 U.S.C. § 1988 for purposes of an award of attorneys' fees under that statute. While the City did not object to the calculation of the fees, it did object to their imposition. The court found Mr. Willis to be a prevailing party and, after independently reviewing the fees and noting that they had been discounted to take into account claims upon which Mr. Willis had not prevailed, the district court found Mr. Willis' requested figure to be reasonable. 784 F.Supp. 1360. On February 10, 1992, the court awarded $139,350.43 in attorneys' fees to Mr. Willis. The City now appeals both the district court's finding of unconstitutional detention and the award of attorneys' fees. This court has consolidated the City's appeals.

## II

### ANALYSIS

A. *The Constitutionality of Mr. Willis' Extended Detention*

■ In *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Supreme Court held that, following a warrantless arrest, the Fourth Amendment requires a prompt judicial determination of probable cause before an arrestee may be subjected to extended pretrial detention. This holding acknowledges that prolonged pretrial detention occasions serious interference with liberty rights. *Id.* at 114, 95 S.Ct. at 863. A judicial assessment of probable cause is thus necessary to guard against illegitimate interference with those rights. In *County of Riverside v. McLaughlin,* —— U.S. ——, ——, 111 S.Ct. 1661, 1668, 114 L.Ed.2d 49 (1991), the Court noted that *Gerstein* sought to balance the law enforcement interest in taking suspected criminals into custody, even when there has been no opportunity for a prior judicial determination of probable cause, against the possibility that detention founded upon an incorrect suspicion of wrongdoing may adversely affect the arrestee's job, income, and family relationships. Thus, *Gerstein* was a " 'practical compromise' between the rights of individuals and the rights of law enforcement." *McLaughlin,* —— U.S. at ——, 111 S.Ct. at 1668.

■ In *McLaughlin,* the Supreme Court defined the "promptness" requirement of *Gerstein.* The Court acknowledged that, because *Gerstein* allows the incorporation of judicial probable cause determinations into other pretrial procedures, some types of delay are simply unavoidable. *McLaughlin,* —— U.S. at ——, 111 S.Ct. at 1669. Thus, the regular problems confronting police when processing arrestees through the overcrowded criminal justice system may give rise to delays that are not deemed to violate the Fourth Amendment. *Id. McLaughlin* stated that a policy providing for a judicial probable cause determination within 48 hours of a suspect's arrest will generally satisfy the *Gerstein* promptness requirement. *Id.* —— U.S. at ——, 111 S.Ct. at 1670. Even if a probable cause determination is provided within 48 hours of arrest, however, such a hearing may still violate the Constitution "if the arrested individual can prove that his or her probable cause determination was delayed unreasonably." *Id.; accord Bostic v. City of Chicago,* 981 F.2d 965, 968 (7th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3038, 125 L.Ed.2d 725 (1993).

Some delays are unavoidable because of the practical realities of the criminal justice system. "[T]ransporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, [and] obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest" are all examples of situations in which delays in presentment are reasonable. *McLaughlin*, — U.S. at —, 111 S.Ct. at 1670. While delays caused by the realities of the criminal justice system may be considered reasonable ones, the Court also noted that some delays are patently unreasonable. "[D]elays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake" are all examples of illegitimate reasons to delay a judicial determination of probable cause. *Id.*

In the present case, the Chicago police held Mr. Willis for approximately 45 hours before he was given a probable cause hearing. *See* R.102 at 5. As noted above, such a delay generally complies with *Gerstein*. The parties here, however, disagree as to whether the delay in presenting Mr. Willis to a magistrate for a probable cause determination, pursuant to the extended detention provision, can be considered a reasonable delay under the teaching of *McLaughlin*.

Mr. Willis nevertheless argues that the delay in bringing him before a judicial officer was unreasonable. He notes that *McLaughlin* tolerates only administrative or procedural delays that are reflective of the practical realities of the criminal justice system. Mr. Willis stresses that the delay in his case was not caused by such concerns. Mr. Willis was processed on the Area 3 charges in time to be presented at the next available court hearing, the February 12, 9:30 a.m. holiday court call. Instead, under the extended detention policy, the police chose to delay his initial hearing in order to conduct an investigation on a different set of crimes than those for which he had been arrested. Because the City subjected him to a "self-induced, non-administrative" delay, Mr. Willis asserts that the delay was unreasonable and thus violated the Fourth Amendment. Appellee's Br. at 16.

In reply, the City maintains that the delay occasioned by Paragraph C–2 of the detention policy was a reasonable investigative delay. It notes that Mr. Willis was not held beyond the February 12 court call so that the Area 3 crimes for which he had been arrested could be investigated further. *McLaughlin* would clearly prohibit such a presentment delay because it would be for the purpose of gathering evidence to justify the arrest. — U.S. at —, 111 S.Ct. at 1670. Here, however, the City claims that the delay was not improper because the police were not attempting to buttress a probable cause determination on the Area 3 charges.

Instead, the City contends, investigation of other separate crimes is a reasonable cause for delay. Detaining Mr. Willis to investigate the alleged Area 2 crimes was simply an administrative step, the City asserts, necessary to ensure that the prosecutor and the magistrate made well-informed charging and bail decisions. *See* Appellant's Br. at 20. Had the Area 2 lineup taken place or had the Area 2 witness identified Mr. Willis from the photo array, such information would have been relevant to the charging decision, bail determination, and potential conditions for release. The City asserts that, similar to post-arrest interviews designed to elicit an arrestee's name and address, investigation of other alleged crimes is an administrative step in the arrest process to garner necessary information about an arrestee. Therefore, it contends, the delay caused by such investigation is reasonable.

We believe that the Supreme Court's decision in *McLaughlin* makes Mr. Willis' contentions more tenable than the arguments of the City and that, unlike the plaintiff in *Bostic*, Mr. Willis has demonstrated convincingly the unreasonableness of his prolonged detention. Processing on the Area 3 charges for which he had been arrested was completed in ample time for Mr. Willis to appear at the February 12 court call. The parties agree that he was detained solely to permit the police to place him in lineups relating to other uncharged crimes. The arrest yet to

be judicially scrutinized was used as an opportunity to build a separate case against him. While such delay is not explicitly mentioned as unreasonable in *McLaughlin,* the Court's opinion, in our view, leaves little doubt as to the appropriate course. The Court condemned delays for the purpose of "gathering additional evidence to justify the arrest" as unreasonable and thus determined them to be an illegitimate basis for postponing a judicial determination of probable cause. —— U.S. at ——, 111 S.Ct. at 1670. The delay to which Mr. Willis was subjected is certainly analogous. In both circumstances, a person is subjected to unreasonably prolonged custody without judicial scrutiny so that the police can undertake further investigatory steps that require the presence of the defendant, a presence that cannot properly be required without a prior judicial determination of probable cause.

Contrary to the City's assertions, we do not believe that the delay occasioned here pursuant to the extended detention policy can be characterized fairly or realistically as a mere administrative step resulting from the practical realities of the criminal justice system. If, as the City now contends, the police already had probable cause for the Area 2 lineups, that information could have been provided to the magistrate along with the information furnished with respect to the Area 3 offenses for which Mr. Willis had been arrested.[3] In any event, while the status of the Area 2 investigation was certainly relevant to the magistrate's bail determination[4] on the Area 3 offenses, this factor does not justify denying Mr. Willis his prompt hearing. The magistrate could have been informed of the status of the Area 2 investigation at the bail hearing and could have factored this consideration into the determination. To the extent that the City now

argues that it had a right to hold Mr. Willis until it could build a better case for the denial of bail, it runs afoul of both *Gerstein* and *McLaughlin.*

### B. Availability of Attorneys' Fees under 42 U.S.C. § 1988

■ The district court found that Mr. Willis was a "prevailing party" under 42 U.S.C. § 1983 and that he was thus entitled to attorneys' fees under § 1988 of that title. The court approved Mr. Willis' fee petition in its entirety. However, while this case has been under submission in this court, the Supreme Court decided *Farrar v. Hobby,* —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), which clarified the status of a "prevailing party" for purposes of § 1988 attorneys' fees and delineated the factors that should be considered in fixing a reasonable fee award.

In *Farrar,* the defendants were found guilty of violating the plaintiffs' constitutional rights, but the jury did not find that the plaintiffs had suffered any compensable injury from these violations. *Id.* at ——, 113 S.Ct. at 570. Instead of receiving their requested seventeen million dollars in damages, the plaintiffs were awarded nominal damages of one dollar. They then sought attorneys' fees under § 1988 as prevailing parties. In its review, the Supreme Court held that a plaintiff is a prevailing party when the actual relief "on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at ——, 113 S.Ct. at 573. Because the entry of a nominal damages award is neither the entry of judgment for the defendant on the merits nor a declaration of the defendant's legal immunity to

---

**3.** On appeal, the City also argues that, even before the proposed Area 2 lineups, it had probable cause for the arrest of Mr. Willis for those crimes and that, therefore, it cannot be said that he was being held for a crime on which the police lacked probable cause. This argument has a distinct circular quality to it. The whole point is that there never was a judicial determination of probable cause with respect to these crimes. In any event, the City never makes clear the basis for its post facto assertion that probable cause existed before the victim's attempted identification.

**4.** We cannot accept the City's suggestion that the extended detention policy was written to permit delay only when it was necessary to make informed charging and bail decisions. The very broad language of the policy belies such an interpretation. It allows detention of an arrestee for an unspecified period whenever Criminal Investigation Personnel believe that an investigation ought to continue.

suit, the Court held that a plaintiff who wins nominal damages is a prevailing party under § 1988. *Id.*

Despite the determination that the plaintiff in *Farrar* was a prevailing party, the Court stated that the overall success of the plaintiff's claim, however, is the most critical factor in determining the reasonableness of a fee award. "Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988." *Id.* at ——, 113 S.Ct. at 574. Because the plaintiffs in *Farrar* had gained little more than a moral victory instead of the seventeen million dollars in damages that they had requested, the Supreme Court held that the only reasonable fee for such a judgment is no fee at all. The Court stated that

> [i]n a civil rights suit for damages, however, the awarding of nominal damages also highlights the plaintiff's failure to prove actual, compensable injury. . . . When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all.

*Id.* at ——, 113 S.Ct. at 575 (citation omitted). Thus, although the *Farrar* plaintiffs were prevailing parties, they were not awarded attorneys' fees.

We believe that the result in *Farrar* must control our resolution of Mr. Willis' claim for attorneys' fees. In Count II of his Third Amended Complaint, Mr. Willis sought actual damages and one million dollars in punitive damages from the City for its violation of his Fourth Amendment rights. Although he prevailed on his constitutional claim, the jury awarded Mr. Willis only one dollar in nominal damages. Thus, as noted in *Farrar*, "[t]his litigation accomplished little beyond giving petitioners the moral satisfaction of knowing that a federal court concluded that their rights had been violated in some un-

specified way." *Id.* at ——, 113 S.Ct. at 574 (citation omitted). While courts must certainly also take into consideration other factors, including the significance of the holding to other litigants and to the growth of the law, *see Farrar*, —— U.S. at ——, 113 S.Ct. at 578, Mr. Willis' litigation did not cause the Police Department to rescind the extended detention policy. Mr. Willis filed suit on December 10, 1986, approximately six months after the Department had invalidated the policy.[5] Thus, his legal action cannot be deemed to have instigated the revocation of the extended detention policy. *Cf. Pembroke v. Wood County*, 981 F.2d 225, 231 n. 27 (5th Cir.1993) (holding that although plaintiffs received no money damages, their suit caused the improvement of prison conditions and thus they were entitled to attorneys' fees), *cert. denied*, —— U.S. ——, 113 S.Ct. 2965, 125 L.Ed.2d 665 (1993). Mr. Willis' victory was limited to a recognition that his constitutional rights had been violated by the City and to a nominal award of one dollar. *Farrar* requires that we reverse the district court's award of attorneys' fees.

### Conclusion

For the foregoing reasons, we affirm the district court's decision in part and we reverse in part.

AFFIRMED IN PART AND REVERSED IN PART.

---

**5.** The district court noted in its opinion that the extended detention policy had been rescinded in June 1986. *Willis v. Bell*, 726 F.Supp. 1118, 1124 n. 16 (N.D.Ill.1989). The rescission may have been in response to earlier litigation also regarding the constitutionality of the policy. *See*

*Robinson v. City of Chicago*, 868 F.2d 959, 962 (7th Cir.1989), *cert. dismissed*, 493 U.S. 1012, 110 S.Ct. 708, 107 L.Ed.2d 729 (1989), and *cert. denied*, 493 U.S. 1035, 110 S.Ct. 756, 107 L.Ed.2d 773 (1990).