United States Court of Appeals

FOR THE EIGHTH CIRCUIT

_____

No. 96-2583

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellant, | * |
| | * Appeal from the United States |
| v. * | District Court for the Western |
| | * District of Missouri. |
| Maude C. Clarke, Also Known as | * |
| Tina Clarke, Also Known as | * |
| Angela, | * |
| | * |
| Appellee. * | |

_____

Submitted: January 13, 1997

Filed: April 8, 1997

_____

Before LOKEN, BRIGHT, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

The United States appeals the suppression of a confession by a defendant charged with running an interstate prostitution ring. We reverse.

I.

Late in 1994, a team of federal and state officers in Kansas City, Missouri, began a seven-month investigation of Maude C. Clarke, whom they suspected of running an interstate prostitution ring. By monitoring incoming and outgoing calls on Ms. Clarke's five telephone lines, watching her apartment and her car,

collecting and examining her trash, following the women who worked for her, talking to clients, and examining checks and credit card records secured pursuant to federal grand jury subpoenas, the team developed an extensive picture of Ms. Clarke's operations. Based on this knowledge, in June, 1995, a Kansas City Police Department ("KCPD") detective issued "pick-up orders" for Ms. Clarke and her employees. "Pick-up orders" are entered in the KCPD computer when officers believe that probable cause exists to arrest an individual for a particular crime; the orders relevant to Ms. Clarke indicated that probable cause existed to believe that she was promoting prostitution in violation of both state and federal law and that she should be arrested if encountered.

The morning that the orders were issued, the KCPD arrested Ms. Clarke and took her downtown to the detention unit. After approximately twelve hours, a case agent from the United States Secret Service and a KCPD vice officer jointly questioned her for one and a half to two hours. After obtaining some personal information from Ms. Clarke, the officers read her Miranda rights to her. Ms. Clarke stated that she understood her rights and that she had nothing to hide. During the questioning, Ms. Clarke admitted that she had operated the prostitution ring for several years and that she laundered the ring's proceeds through a sham remodeling company. Ms. Clarke also named all of the women who worked for her. When the officers asked her to give a written statement, however, she refused, saying that she would not sign anything without an attorney. The interrogation then concluded and Ms. Clarke was returned to the detention unit and later released. Officers executed a search warrant for Ms. Clarke's residence shortly after she was picked up, and they found records that suggested the existence of a long-running, financially successful interstate prostitution ring.

Approximately three months later, Ms. Clarke was indicted and charged with a range of federal offenses relating to the conduct of a prostitution ring, including conspiracy, Travel Act violations, money laundering, and wire fraud. She was arraigned the next day and later moved to suppress the statement obtained from her when she was picked up in June. Ms. Clarke initially alleged only that her Miranda rights had been violated, but later argued as well that her arrest by local officers had been a pretext to allow federal officers to question her about a federal investigation. The district court, adopting the report and recommendation of a magistrate judge, suppressed the statement on the grounds that Ms. Clarke's arrest was pretextual and that the officers had intentionally circumvented Fed. R. Crim. P. 5(a) by not presenting her before a magistrate judge. The United States appeals the statement's suppression.

## II.

The United States first argues that the district court's finding that Ms. Clarke's arrest was pretextual is immaterial under Whren v. United States, 116 S. Ct. 1769 (1996). In that case, police officers who were patrolling a neighborhood known for drug trafficking stopped a truck after it turned without signaling and then sped away. The officers approached the truck, spotted two large bags of crack cocaine in the passenger's hands, arrested both of the truck's occupants, and retrieved several kinds of illegal drugs from the truck.

The petitioners in that case challenged the legality of the stop, arguing that although probable cause existed to believe that they had committed a traffic violation, no reasonable officer would have stopped them solely on that basis and that the officers' decision to stop them was merely a pretext to investigate possible

drug activity, for which no probable cause existed before the stop.  The Supreme Court flatly rejected that argument, stating that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis" and holding that such motives cannot invalidate police conduct that is justified by probable cause.  Id. at 1774.  Although Whren specifically concerned a traffic stop, we believe that its principle is applicable to all police activities for which probable cause is required.  See, e.g., United States v. Hathcock, 103 F.3d 715, 719 (8th Cir. 1997) (drug trafficking arrest at airport).

In analyzing Ms. Clarke's arrest under the fourth amendment, we therefore ignore the officers' subjective intentions and focus solely on the objective question of whether probable cause existed.  Whren, 116 S. Ct. at 1774; Hathcock, 103 F.3d at 719.  The district court found that the information gathered by the officers during the investigation of Ms. Clarke and her activities established probable cause that she was promoting prostitution in violation of both state and federal law, and that finding is neither clearly erroneous nor incorrect as a matter of law.  Indeed, Ms. Clarke does not even contend that it is.  We therefore agree with the United States that the suppression of Ms. Clarke's confession was erroneous under Whren.

The district court recognized that we have held numerous times that the validity of an arrest is to be determined not by reference to the motive for effecting it but rather by making an objective inquiry into what the fourth amendment would allow in the circumstances that the particular case presents.  See, e.g., United States v. Cummins, 920 F.2d 498, 501 (8th Cir. 1990), cert. denied, 502 U.S. 962 (1991).  The district court also recognized that federal agents may make arrests without warrants if there is

probable cause to do so, but it believed that because the officers making the arrest in this case did so "pursuant to" Mo. Rev. Stat. § 544.170, the arrest, from a federal point of view, was illegal from the beginning. That is because, the district court found, the federal officers were taking advantage of the cover provided by the Missouri statute to circumvent Fed. R. Crim. P. 5(a), which requires that a person arrested be brought before a magistrate judge "without unnecessary delay." The Missouri statute requires the release of an arrested person unless he or she is charged with a crime within twenty hours of the arrest.

We believe that the district court has confused the question of whether an arrest was valid with the very different question of whether Fed. R. Crim. P. 5(a) was violated. The Missouri statute, first of all, does not purport to give anyone a power to arrest. That statute is concerned not with the authority to arrest but with the rights of persons who have already been arrested. Contrary to what the district court held, therefore, arrests cannot be made "pursuant to" this statute. We note, moreover, that even if the statute conferred an authority to arrest, and even if the federal officers were somehow relying on it to effect the arrest in this case, that would still not alter the fact that they had probable cause to make the arrest in the first place. The arrest was objectively valid, no fourth amendment violation occurred, and the evidence cannot therefore be suppressed on that account.

Nor is the case of Abel v. United States, 362 U.S. 217 (1960), also relied on by the district court, of any avail to Ms. Clarke. In that case, the Court held that the FBI could not employ an administrative warrant appropriate for the initiation of deportation proceedings as a subterfuge for gathering evidence against a person for espionage. We wonder, in the first place,

about the continued validity of Abel in light of Whren.  But we believe, in any event, that the present case is distinguishable, because the gravamen of the defendant's complaint in Abel was that the FBI did not have probable cause to arrest him for espionage.  Here it is admitted that there was ample cause to arrest Ms. Clarke for the very offense with which she was eventually charged.  There was thus no attempt to circumvent the fourth amendment in this case and the rule of Abel, even if it retains some validity, is, accordingly, not potentially applicable.

III.

The United States also contests the district court's ruling that the failure of officers to present Ms. Clarke before a magistrate judge in a timely manner, as required by Fed. R. Crim. P. 5(a), automatically compelled the suppression of her statement under 18 U.S.C. § 3501.  We note at the outset that the United States concedes, for reasons that we do not fully comprehend, that Ms. Clarke's arrest was for violation of federal law and that it therefore triggered the application of both Fed. R. Crim. P. 5(a), which requires presentment before a magistrate judge "without unnecessary delay," and 18 U.S.C. § 3501, which governs the admissibility of confessions in federal criminal prosecutions.  The United States argues, however, that the three-month delay between Ms. Clarke's arrest and her arraignment (which resulted from the decision to release Ms. Clarke after the June arrest) does not by itself mandate the suppression of her statements, but is simply one of several matters that must be considered in evaluating whether her statements were voluntary.  The United States further contends that because it is clear from this record that Ms. Clarke's statements were voluntary, the district court erred in suppressing them.  We agree, even assuming that the failure to bring Ms. Clarke before a magistrate judge was a violation of Fed. R. Crim. P. 5(a).

18 U.S.C. § 3501 governs the admissibility of confessions in federal prosecutions. It directs the admission of "voluntarily given" confessions, see § 3501(a), and requires trial courts to consider all of the circumstances surrounding a confession when determining its voluntariness, see § 3501(b). The statute enumerates some circumstances that ought to be considered in making a decision on a motion to suppress, including (1) the time between the arrest and the arraignment of a defendant who makes a confession in that interim; (2) whether the defendant knew of the nature of the offense of which he or she was suspected or charged at the time he or she made the confession; (3) whether the defendant was advised or knew that he or she was not required to make any statements and that if he or she did, any such statements could be used against him or her; (4) whether the defendant was advised before questioning of his or her right to counsel; and (5) whether the defendant had counsel during questioning and when making his or her confession. Id. The statute also specifically states, however, that the presence or absence of any one of those circumstances "need not be conclusive" on the issue of admissibility. Id.; see also United States v. Pugh, 25 F.3d 669, 675 (8th Cir. 1994).

In Ms. Clarke's case, a consideration of the circumstances surrounding her arrest and interrogation compels us to conclude, as a matter of law, that her statement should not have been suppressed. First, the district court found, as a factual matter, that Ms. Clarke's statements were not coerced. Specifically, the district court found that Ms. Clarke was told that she had been arrested for promoting prostitution and was advised of her Miranda rights, and that she then knowingly waived those rights before interrogation, giving her statement freely to the detectives who

questioned her. These factual findings have ample support in the record and, in fact, are not challenged, and we therefore believe that the second, third, fourth, and fifth considerations enumerated in the statute incline in favor of admitting Ms. Clarke's statement.

Second, because the underlying concern of § 3501 is to ensure that a suspect's will is not overborne when making a confession, see, e.g., United States v. Makes Room, 49 F.3d 410, 414 (8th Cir. 1995), we believe that, for the purposes of Ms. Clarke's case, the time period relevant to a consideration of the first statutory factor is the interval between her arrest and her release. That is because upon her release she became free from any possible danger of coercion. Other than the twelve-hour delay between Ms. Clarke's arrest and her release, there is no evidence that her confession was anything other than voluntary, and we do not believe that a delay of this duration, standing alone, could establish that a suspect's will was overborne. In the present case, moreover, the district court specifically found that there was no evidence that this delay coerced Ms. Clarke into making her statement.

Since, therefore, none of the statutory considerations tends to undermine the voluntariness of Ms. Clarke's statement, the district court erred in suppressing it.

IV.

For the foregoing reasons, we reverse the district court's suppression of Ms. Clarke's confession and remand for proceedings consistent with this opinion.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-