# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3103

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellant, | * | Appeal from the Untied States District |
| | * | Court for the District of Minnesota |
| | * | |
| v. | * | |
| | * | |
| Skye Renee Davis, | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted: December 15, 1998
Filed: April 22, 1999

_____

Before McMILLIAN, LAY, and HALL,[1] Circuit Judges.

_____

HALL, Circuit Judge.

The United States appeals the district court's[2] order suppressing a statement made by Skye Renee Davis to local and federal authorities because it was obtained in violation of the Fourth Amendment to the U.S. Constitution. The district court

_____

[1] The Honorable Cynthia Holcomb Hall, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[2] The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

suppressed the statement because the officers' delay in presenting Davis to a magistrate for a determination of whether probable cause supported her warrantless arrest was for the sole purpose of investigating whether Davis had committed federal firearm offenses. We have jurisdiction to review the district court's suppression order pursuant to 18 U.S.C. § 3731, and we affirm.

## I.

On May 2, 1997, Davis reported to the St. Paul, Minnesota, police that several guns had been stolen from her car. Officer Michael Johnson responded to the report, and went to Davis' residence to investigate the matter. After hearing Davis' version of events, however, Johnson revealed to Davis that he doubted the veracity of her story, and suspected that she was actually involved in the illegal trafficking of firearms. He informed her that if she did not tell him the truth, he would investigate his suspicions. Johnson also told Davis that if he uncovered evidence implicating Davis in illegal activities, she could go to jail and lose custody of her two-year-old child.

Davis then admitted that she had just made a false report of theft. In response, Johnson arrested Davis and took her to the police station to "talk to an investigator downtown" and to "see what happens from there." Davis was placed in a holding cell at the police station while Johnson conferred with Sergeant Joe Flaherty. After this conversation, Johnson had no further involvement in the case, and did not file a police report documenting his arrest of Davis.

After a delay of over two hours, Flaherty and Special Agent Catherine Kaminski, of the Federal Bureau of Alcohol, Tobacco and Firearms, interviewed Davis. Davis received her proper <u>Miranda</u> warnings, and made a third statement wherein she confessed to helping her boyfriend illegally traffic in firearms. Davis was not charged with any crime that day, however, and was released after agreeing to cooperate with

federal authorities in obtaining evidence against her boyfriend.[3]  Despite the fact that she was detained for over two hours before her interview with Flaherty and Kaminski, administrative booking procedures were never initiated, and Davis was never presented to a magistrate for a determination of whether probable cause supported her warrantless arrest by Johnson.

Kaminski later testified that she thought that Davis' statements to her and Flaherty constituted probable cause to arrest Davis on federal charges.  Kaminski stated that she knew on the day of the interview with Davis that she would recommend to the United States Attorney that Davis be prosecuted for federal firearm offenses. Nonetheless, it was not until nine months later, on February 19, 1998, that the grand jury returned an indictment alleging that Davis had made false statements to acquire sixteen firearms, in violation of 18 U.S.C. § 922(a)(6).

In response to the indictment, Davis moved to suppress, among other statements, her admission of guilt to Kaminski and Flaherty.  Chief Magistrate Judge Franklin Noel recommended that the statement be suppressed because Davis was not provided with a prompt judicial determination of probable cause following her arrest.  District Judge John Tunheim adopted the recommendation of the magistrate judge because the statement "was the product of defendant's being detained for over two hours for the sole purpose of investigating whether she had committed a federal gun crime."[4]

---

[3] Approximately a month after these events, in June of 1997, Kaminski began to suspect that Davis had revealed to her boyfriend that she was cooperating with authorities.

[4] The district court also adopted the magistrate judge's recommendation to suppress Davis' admission to Johnson that she had made a false report of stolen firearms because Johnson had failed to give Davis her Miranda warnings before that statement was made.  The government does not appeal this ruling.

The government now appeals the district court's suppression of Davis' statement to Kaminski and Flaherty.

## II.

We must decide whether the failure to present Davis to a magistrate for a probable cause determination violated the Fourth Amendment to the U.S. Constitution. If it did, then Davis' statement to Kaminski and Flaherty was unconstitutionally obtained. "We review the district court's factual determinations concerning the detention for clear error; the district court's ultimate conclusion as to whether the Fourth Amendment was violated is a question of law subject to de novo review." United States v. Pereira-Munoz, 59 F.3d 788, 791 (8th Cir. 1995).

We have previously stated that "[t]he fourth amendment requires prompt judicial determination of probable cause as a prerequisite to an extended restraint on liberty following an arrest without a warrant." Wayland v. City of Springdale, 933 F.2d 668, 670 (8th Cir. 1991). Importantly, "[a] defendant may be detained only for as long as it takes to process 'the administrative steps incident to arrest.'" Id. (quoting Gerstein v. Pugh, 420 U.S. 103, 114 (1975)).

The Supreme Court has held that "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein." County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991). Nevertheless, the Court has also made clear that a probable cause determination in a particular case is not constitutional simply because it was conducted within 48 hours of arrest. See id. "Such a hearing may . . . violate Gerstein if the arrested individual can prove that his or her probable cause determination was delayed unreasonably." Id. Cases establish that a delay may be unreasonable if it is motivated by a desire to uncover additional evidence to support the arrest or to use the suspect's presence solely to investigate the suspect's involvement in other crimes. See id.; Willis v. City of Chicago, 999 F.2d 284, 288-89 (7th Cir. 1993).

Here, Davis has met her burden of establishing that her probable cause determination was unreasonably delayed by police efforts to investigate her possible involvement in federal gun crimes. In reaching this conclusion, we assume, as did the district court, that probable cause supported Johnson's initial arrest of Davis, ostensibly for filing a false police report.[5] Nevertheless, the fact that probable cause supported the initial arrest does not make Davis' subsequent detention constitutional. See Wayland, 933 F.2d at 669 ("Gerstein may be violated even in situations where probable cause for the arrest exists.").

Evidence adduced before the magistrate judge established that Johnson "detained defendant with the singular intent of investigating further the possibility that [Davis] . . . had violated federal gun laws."[6] Johnson arrested Davis and transported her not to the jail, but directly to the police station, where she was placed in a holding cell for over two hours. Johnson never filed any report recording his arrest of Davis for making a false police report or for committing any other crime. In addition, booking procedures were never initiated–Davis was never fingerprinted or otherwise administratively processed. Kaminski's testimony indicates that the sole purpose of Davis' interrogation was to uncover evidence of federal gun crimes. Davis was not permitted to leave the station until she had incriminated herself and agreed to assist the authorities in their investigation. Based on these facts, we cannot say that the district court committed clear error by concluding that Davis was detained for the sole purpose

---

[5] While at the suppression hearing Johnson had difficulty naming any particular crime that he suspected Davis had committed at the time he arrested her, it appears from the facts of this case that probable cause existed to find that Davis had made a false police report to Johnson in violation of Minnesota law. See Minn. Stat. § 609.505.

[6] For example, Johnson testified that he brought Davis to the police station to "talk to an investigator downtown and then we'll see what happens from there." Johnson had previously testified that he had told Davis that he "wanted her to come with me down to the St. Paul Police Department, that we would talk to an investigator, and then we'll see at that time where this case goes."

of investigating whether she had committed other criminal offenses, not to process her on charges of making a false police report.

Although Riverside only explicitly stated that delays in probable cause determinations resulting from police efforts to justify the suspect's original arrest would be unreasonable, later cases have clarified that this principle applies with equal force to situations where the delay is based solely on police efforts to investigate additional crimes in which the suspect might have participated.  See id. at 56; Willis, 999 F.2d at 289; see also Kanekoa v. City & County of Honolulu, 879 F.2d 607, 612 (9th Cir. 1989) ("[T]he fourth amendment does not permit the police to detain a suspect merely to investigate.").

In Willis, which involved a section 1983 claim, the court found that the suspect "was detained solely to permit the police to place him in lineups relating to other uncharged crimes."  Willis, 999 F.2d at 288.  The court found that Riverside condemned this action because, as in situations where a suspect is detained to allow officers to obtain additional evidence to justify their initial arrest, the suspect was "subjected to unreasonably prolonged custody without judicial scrutiny so that the police [could] undertake further investigatory steps that require[d] the presence of the defendant, a presence that cannot properly be required without a prior judicial determination of probable cause." Id. at 289.  Similarly here, Davis was detained only so that officers could question her about further crimes that she may have committed.[7]

---

[7] We reject the government's attempt to distinguish Willis by relying on the Seventh Circuit's subsequent decision in United States v. Sholola, 124 F.3d 803 (7th Cir. 1997).  In Sholola, police had arrested the suspect on suspicion of credit card fraud, but later uncovered evidence of the suspect's involvement in drug trafficking. See id. at 810.  This incriminating evidence was revealed in part by a search of a locker to which the suspect had consented during the approximately forty hours that he waited to be presented to a magistrate for a probable cause determination. See id. at 809-10.  The Seventh Circuit rejected the suspect's attempt to suppress evidence seized from the locker on the grounds that Gerstein had been violated because

The government attempts to bolster its position by relying on the relatively brief period for which Davis was detained–well under three hours.  The government points out that the detention in <u>Willis</u> lasted for forty-five hours.  In addition, the Supreme Court has emphasized that "[i]n evaluating whether the delay in a particular case is unreasonable . . . courts must allow a substantial degree of flexibility."  <u>Riverside</u>, 500 U.S. at 56.

But the Supreme Court has also indicated that this flexibility is required to account for the inevitable administrative delays that are necessary to process individuals before they may be presented to a magistrate for a probable cause determination.  <u>See</u> <u>id.</u> at 56-57; <u>Wayland</u>, 933 F.2d at 670 ("A defendant may be detained only for as long as it takes to process the administrative steps incident to arrest.") (internal quotation omitted); <u>Kanekoa</u>, 879 F.2d at 612 (noting that investigation of a suspect is not an administrative step incident to arrest).  Here, there

---

officers had continued to investigate the suspect before he had been presented to a magistrate for a probable cause determination.

<u>Sholola</u> is readily distinguishable from the case at hand.  First, nothing we say today prevents police from investigating a detained suspect on the crime for which he or she was arrested, or for other unrelated charges, while the suspect is being booked or waiting for an available magistrate.  Here, however, no administrative processing was ever initiated.  Second, <u>Sholola</u> merely held that the suspect had been unable to meet his burden of rebutting the <u>Riverside</u> 48-hour presumption of reasonableness.  <u>See</u> <u>id.</u> at 819; <u>see also</u> <u>id.</u> at 823 (Wood, J., concurring).  Here, Davis has.  Third, the suspect in <u>Sholola</u> was eventually presented to a magistrate for a probable cause determination on the offense for which he was arrested, unlike Davis.  Fourth, while statements in <u>Sholola</u> could be seen as undercutting <u>Willis</u>, <u>Sholola</u> expressly noted that its situation was different from that in <u>Willis</u> because <u>Willis</u> involved an instance where the police "had detained [the suspect] . . . solely for the purpose of using his physical presence to further investigate other crimes."  <u>Id.</u> at 820 (emphasis removed).  That is precisely what happened with Davis in this case.

were no such administrative delays–no booking process was ever initiated. Riverside does not establish a per se rule that an individual may be detained for 48 hours by local authorities for any purpose whatsoever. Nor does it stand for the proposition that authorities may violate the Constitution as long as they do so for only a brief period of time.

The result we reach today is also entirely consistent with our prior decisions in Warren v. City of Lincoln, 864 F.2d 1436 (8th Cir. 1989) (en banc) (plurality opinion), and United States v. Boyer, 574 F.2d 951 (8th Cir. 1978). In both of those cases, administrative processing provided an adequate explanation for the delay in presenting the detained individual to a magistrate for a probable cause determination. See Warren, 864 F.2d at 1442 (noting that delay of two hours and twenty minutes in presenting the suspect to a magistrate was explained by the fact that during the delay the suspect was "questioned about his background and activities that night, fingerprinted, photographed, processed [on the charge for which he was arrested], and allowed to acquire money with which to post bond"); Boyer, 574 F.2d at 955 & n.10 (permitting admission of statements at trial that were made during an interview that was conducted before the suspect was presented to a magistrate because the delay was occasioned by the fact that by the time the suspect was booked, it was too late to obtain the services of a magistrate until the next morning).

The police in Boyer did question the suspect about his crime before he was presented to a magistrate for a probable cause determination. The government seizes on this fact to argue that the questioning of Davis here was also permissible. But that aspect of Boyer is irrelevant to our holding today. Police may well have been able to question Davis about various aspects of her suspected gun trafficking pending completion of the booking process and location of an available magistrate. What is objectionable here is that Davis was detained for the sole purpose of enabling local and federal authorities to interrogate her about other possible crimes that she may have committed. No process was ever initiated that would have culminated in Davis being

**-8-**

presented to a magistrate to determine whether probable cause existed to arrest Davis for filing an allegedly false police report.

As a result, the district court did not err as a matter of law in finding that Davis' statement to Kaminski and Flaherty was the product of a Fourth Amendment violation.[8] Davis has established that her probable cause determination was unreasonably delayed by the officers' attempts to investigate her role in additional crimes.[9]

III.

_____

[8] We do not decide whether suppression is necessarily the appropriate remedy for a Gerstein/Riverside violation. The Supreme Court has not decided the issue, and we decline to do so here because the government did not argue before the district court that suppression was an improper remedy. See Powell v. Nevada, 511 U.S. 79, 85 n.* (1994) (stating that "[w]hether a suppression remedy applies in . . . [the Riverside] setting remains an unresolved question," and declining to decide the issue because it "was not raised, argued, or decided below"); see also Perkins v. Grimes, 161 F.3d 1127, 1130 (8th Cir. 1998); Warren, 864 F.2d at 1439 ("As a general rule, we do not consider arguments or theories on appeal that were not advanced in the proceedings below.") (internal quotations omitted). Indeed, the government only asks that we consider the propriety of suppression insofar as we might direct the district court to consider the issue if we were to remand the case for further proceedings. Since we find no error that would justify such a remand, see infra, Part III, we need not address the matter further.

[9] In reaching our conclusion, we also reject the government's reliance on United States v. Clarke, 110 F.3d 612 (8th Cir. 1997), which, as the government concedes, did not even purport to discuss Riverside. Similarly, we decline the government's invitation to import 18 U.S.C. § 3501, which addresses the voluntariness of confessions made while a suspect is in custody but has not yet been presented to a magistrate, into the Fourth Amendment context. Finally, the delays approved of in United States v. Alvarez-Sanchez, 511 U.S. 350 (1994), do not affect our analysis because Alvarez-Sanchez was careful to note that it did not consider these delays in the context of Riverside. See id. at 360 n.5.

The government also claims that the district court erred by refusing to grant the government a second evidentiary hearing to further explore the circumstances of Davis' detention. We review the district court's decision to deny an evidentiary hearing for an abuse of discretion. See United States v. Vig, 167 F.3d 443, 450 (8th Cir. 1999); United States v. Hiveley, 61 F.3d 1358, 1360 (8th Cir. 1995) (per curiam).

The government first argues that it had insufficient notice of the fact that the magistrate judge was considering suppressing Davis' statement to Flaherty and Kaminski because of a Gerstein violation. But the government was on notice that Davis was moving to suppress her statements because of alleged constitutional violations. At the evidentiary hearing before the magistrate judge, Davis testified as to the length of her detention before she was interrogated by authorities. In addition, at the close of the hearing, the magistrate judge specifically requested the government's position as to Davis' right to a probable cause determination on the charge for which Johnson had arrested her. As a result, we cannot say that the district court abused its discretion in declining the government's request for an additional evidentiary hearing, a request that was made only after the magistrate judge had issued his unfavorable ruling.

The government also argues that a second evidentiary hearing is required because insufficient evidence supports the district court's conclusion that Davis was detained solely for the purposes of investigating additional crimes. Specifically, the government contends that Flaherty's testimony is vital to ascertaining the reasons for Davis' incarceration because he was the official who had primary custodial responsibility for Davis during most of her detention. The government claims that the testimony of Johnson cannot adequately establish the reasons for the delay in presenting Davis to a magistrate because he was not involved in Davis' detention after he delivered her to the police station and placed her in a holding cell.

The government correctly notes that Johnson's intent in arresting Davis is irrelevant as long as there is sufficient objective evidence establishing probable cause

-10-

for the arrest. See Whren v. United States, 517 U.S. 806, 813 (1996); United States v. Clarke, 110 F.3d 612, 614 (8th Cir. 1997) ("In analyzing [defendant's] . . . arrest under the fourth amendment, we . . . ignore the officers' subjective intentions and focus solely on the objective question of whether probable cause existed."). Here, probable cause presumably existed for Johnson to arrest Davis for filing a false police report.

But the subjective intent of police officers is an appropriate consideration in evaluating the reasonableness of the delay in presenting a suspect to a judicial officer for a probable cause determination. See Riverside, 500 U.S. at 56 (examining whether delay in presentation to magistrate was unreasonable because the delay was "for the purpose of gathering additional evidence to justify the arrest, . . . motivated by ill will against the arrested individual, or [represented] delay for delay's sake").

Johnson's testimony clearly establishes that the delay itself, not the arrest, was subjectively unreasonable. Johnson testified that he detained Davis and brought her to the police station so that she could be interrogated by investigators on possible federal gun crimes. Johnson never attempted to charge defendant for making a false police report. Instead, Johnson informed Flaherty of his gun trafficking suspicions, turned defendant over to Flaherty and Kaminski for interrogation on possible firearm offenses, and left the station without ever filing a report on Davis' arrest. This evidence, when combined with Kaminski's description of Davis' questioning by her and Flaherty, provides ample support for the district court's finding that the delay in presenting Davis for a probable cause determination was unreasonable. The district court's conclusion is further supported by the fact that no booking procedures were ever initiated, Davis was never charged with making a false police report, and Davis was never presented to a magistrate for a probable cause determination.

While Flaherty's testimony would doubtlessly have been relevant, it was by no means necessary. If the government thought that his testimony was vital to the court's inquiry, it could have requested that Flaherty testify at the first evidentiary hearing.

**-11-**

Indeed, the magistrate judge had already delayed the first hearing once so that Johnson could be located to offer testimony on the circumstances of Davis' arrest and detention. There is no indication that the government could not have made a similar request to obtain Flaherty's attendance at that hearing.

## IV.

The district court properly found that the delay in presenting Davis to a magistrate for a probable cause determination constituted a violation of the Fourth Amendment because that delay was for the sole purpose of using Davis' presence to investigate other crimes with which she might have been involved. The decision of the district court is AFFIRMED.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.