# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4296

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal From the United States District |
| | * | Court for the District of Nebraska. |
| Lucky C. Brown, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 11, 2000

Filed: June 28, 2000

_____

Before McMILLIAN, ROSS and WOOD,[1] Circuit Judges.

_____

ROSS, Circuit Judge.

Lucky C. Brown appeals from a judgment of the district court[2] entered after a conditional guilty plea to possession of crack cocaine with the intent to distribute, in

_____

[1]The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation.

[2]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

violation of 21 U.S. C. § 841(a)(1).  Brown reserved his right to appeal the court's denial of his suppression motion.   We affirm.

On April 25, 1998, Omaha, Nebraska police officers Gary Kula and Shawn LeClare responded to a radio dispatch about gunfire and a single vehicle accident at an intersection.   On arriving at the scene, the officers saw that a vehicle with an apparent bullet hole in the windshield had struck a pole.  They looked in the car, but found no one in it.  The officers then heard a bystander shout "They're over there; they're getting in the car" and saw three persons get into a Bronco.  A police car blocked the Bronco, and Leroy Hadley, who was driving, exited and was handcuffed.  Kula then asked Brown, who was the front seat passenger, to get out.  After he did so, Kula handcuffed Brown and took him to the rear of the Bronco to search for weapons.  During a pat-down, Kula felt a hard golf-ball size lump in Brown's front pants pocket.  At the same time, Kula heard an officer shout he saw a gun in the back seat of the Bronco.  Kula, thinking the lump might be ammunition, reached in the pocket and took it out.  Although the lump appeared to be drugs, because it was not a weapon or ammunition, Kula put it back in the pocket.  Leaving Brown with another officer, Kula went to the front of the Bronco and was told a handgun was on the floorboard near the back seat.  In retrieving the gun, Kula lifted the front seat forward and found a second gun wedged between the front passenger seat and the console.  Kula performed a second search of Brown and retrieved the lump, which was later determined to be 25 grams of crack cocaine.

On October 16, 1998, Kula and Officer Brian Heath drove past Brown's house and saw his car outside.  Knowing there was a pending arrest warrant on a federal indictment, the officers knocked on the front door and Brown let them in.  The officers arrested Brown and asked if anyone else was in the house.  Brown paused and, after a second inquiry, said no.  Heath then conducted a protective sweep search of the house.  Although he found no other persons present, after finding weapons Heath suspended the search, secured the house, and obtained a warrant.  In the search

conducted pursuant to the warrant, officers seized weapons and narcotics paraphernalia.

After a hearing, the district court denied Brown's suppression motion. The court held that the search of Brown's person was lawful because it was incident to an arrest, concluding probable cause existed at the time Kula heard there was a gun in the Bronco. In any event, the court held that even if probable cause had not existed at that time and the pat-down exceeded the proper scope under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), the crack cocaine was admissible under the inevitable discovery exception. The court also held that the protective sweep search of the house was lawful because the officers had a reasonable belief that someone else was in the house and would pose a danger to them.

Brown first argues that the district court erred in holding there was probable cause for an arrest when Kula heard the officer shout there was a gun in the Bronco. He notes Kula testified he arrested Brown for carrying a concealed weapon, but points out the weapon the officer saw was on the floorboard of the Bronco in plain view and asserts state law only prohibits carrying a concealed weapon, citing Neb. Rev. Stat. § 28-1202 (Reissue 1995). However, as the government points out, Omaha, Neb. Mun. Code § 20-206(b) (as amended in 1997) makes it unlawful to "carry or transport a <u>concealable</u> firearm in a motor vehicle") (emphasis added). <u>See</u> <u>United States v. Hatten</u>, 68 F.3d 257, 261 (8th Cir. 1995) ("Omaha ordinance prohibits most carrying of 'concealable' weapons inside motor vehicles"), <u>cert. denied</u>, 516 U.S. 1150 (1996). Moreover, as the government argues, it is immaterial that Kula did not cite the ordinance at the hearing, or even knew about it. It is well-established that a probable cause inquiry is objective. <u>See</u> <u>United States v. Davis</u>, 174 F.3d 941, 947 (8th Cir. 1999). In other words, a police officer's intent "is irrelevant as long as there is sufficient objective evidence establishing probable cause for the arrest." <u>Id.</u> In this case, we agree with the government that a reasonable officer would have known Brown violated the ordinance. <u>See</u> <u>United States v. Kalter</u>, 5 F.3d 1166, 1168 (8th Cir. 1993)

-3-

(even though officers misinterpreted concealed weapons statute, arrest lawful since reasonable person would have known defendant violated city ordinance). In any event, as the district court alternatively held, the crack cocaine would have inevitably been discovered in that the officers were investigating the shooting at the intersection.

Brown also argues that the sweep search of the house was unlawful, asserting the officers did not have a reasonable belief based on specific and articulable facts that someone who posed a danger to the officers was in the house. See United States v. Boyd, 180 F.3d 967, 975 (8th Cir. 1999). We disagree. The fact that Brown paused before responding to an inquiry whether anyone else was in the house, coupled with the officers' knowledge that Hadley had been Brown's roommate and multiple weapons had been recovered in the prior arrest, was more than sufficient. In addition, the fact that the arrest had occurred five months earlier did not make the information stale. See id. at 973, 975 (protective sweep based on 11-month old information). We also note that the officers conducted a data check which indicated Brown was considered dangerous.

Accordingly, we affirm the district court's judgment.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT