# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2763

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Ramon Louis Rivera, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 9, 2004

Filed: June 3, 2004

_____

Before MORRIS SHEPPARD ARNOLD, HANSEN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

We must determine the constitutionality of a warrantless arrest of Ramon Louis Rivera and the voluntariness of his custodial statement. Because we conclude that there was probable cause for Rivera's arrest, that there was no unreasonable delay in presenting him to a magistrate after arrest, and that his statements were voluntary, we affirm the district court's[1] judgment of conviction for two narcotics offenses. We also affirm the sentence imposed by the district court.

_____

[1] The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

## I. *Facts*

In February of 2002, Minnesota law-enforcement officers received a tip from a cooperating individual ("CI") that methamphetamine was being sold by a person known as "Junior." In response to the tip, officers conducted two successful controlled purchases of methamphetamine from "Junior," who was later identified as Brian Peter McQuillan.

A third scheduled purchase took place on February 27, 2002. Officers observed a vehicle enter a parking lot near the designated location for the transaction. Two individuals, McQuillan and Rivera, were in the vehicle. Rivera exited the vehicle, walked across the street, and entered a Burger King restaurant. While Rivera was in Burger King, McQuillan drove the vehicle to the Burger King parking lot. Rivera exited the restaurant and stood at the southeast corner of the building watching McQuillan and the undercover officer in the parking lot. McQuillan entered the undercover officer's vehicle and sold 14.6 ounces of methamphetamine.

At this point, officers moved in to arrest Rivera and McQuillan. Rivera saw the officers approaching and began walking away from the scene. However, as officers pursued Rivera he stopped and lay on the ground with his hands out. The officers performed a pat-down search,[2] handcuffed Rivera, and placed him in the back seat of a police car. While waiting in the vehicle, Rivera voluntarily began talking to the officers and asking questions about his arrest. Specifically, he inquired about the potential for securing a "deal" for useful cooperation with authorities. Rivera's voluntary statements came prior to any police interrogation or *Miranda* warning. In response to his inquiry, police simply instructed Rivera to speak with the lead investigator about the possibility of any "deal."

---

[2] No drugs, large sums of cash, or weapons were found on Rivera or in his flight path.

At the jail, Rivera was read his *Miranda* rights, informed that he was under arrest, and asked if he was willing to speak with the officers. He agreed. The interview was tape-recorded (all but the introduction) and lasted approximately fifteen minutes. Rivera admitted that he had possessed and sold methamphetamine. He also reiterated his willingness to cooperate with officials. The tape reveals no threats or promises of leniency as inducements for his cooperation. After consulting with government officials, the federal charges were deferred pending Rivera's cooperation in further investigations of his drug source.

Rivera was released and was given a recorder to tape a conversation with his drug source. The first attempt to contact his drug source (Gordo) failed, and Rivera was instructed to keep in contact with the officers on a daily basis. However, Rivera did not contact the officers, and there was no other contact with law enforcement until Rivera was apprehended approximately one year later.

On March 20, 2002, a grand jury returned a two-count indictment charging Rivera and McQuillan with conspiracy to possess with the intent to deliver methamphetamine, and with possessing with the intent to deliver methamphetamine. Rivera filed pretrial motions challenging the constitutionality of his February 27, 2002, warrantless arrest, his confession, and the delay in presenting him to a magistrate after his arrest. Each of these motions was denied. After a bench trial, Rivera was found guilty on each count charged.

At sentencing, the government requested an obstruction of justice enhancement based on Rivera's testimony at the motions hearing. Rivera requested a reduction for acceptance of responsibility. The district court denied both motions and sentenced Rivera to 168 months' imprisonment. This appeal followed.

## II. *Discussion*

### A. *Probable Cause*

The first issue we address is whether the officers had probable cause to arrest Rivera. Probable cause for an arrest exists if, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed. *United States v. Wajda*, 810 F.2d 754, 758 (8th Cir. 1987). We evaluate probable cause not from the perspective of an omniscient observer, but on the facts as they would have appeared to a reasonable person in the position of the arresting officer. *Id.*

We believe there was probable cause for Rivera's arrest. On the day of his arrest, officers observed Rivera in McQuillan's Grand Am–the same vehicle used in the two initial controlled buys. After a couple of minutes, Rivera exited the vehicle and walked across the street to the Burger King lot. Moments later, McQuillan drove the Grand Am to the Burger King lot and parked next to the undercover vehicle. At this point, Rivera came out of the restaurant and surveilled the entire parking-lot area during the meeting. When officers converged on the scene, he suspiciously departed from his location, heading away from the police.

Based upon these facts, a reasonably prudent person could conclude that Rivera was a participant in the methamphetamine sale. His actions and behavior, although perhaps seemingly innocuous to the general public, were reasonably suspicious to officers trained to recognize behaviors consistent with those of a lookout for a drug deal. As such, we find there was probable cause for Rivera's arrest. Therefore, the district court properly denied his motion to suppress.

### B. *Suppression of Interview Statement*

Rivera next claims that the statement he made to officers following his arrest was conditionally offered in exchange for a promise of leniency. He urges us to

suppress this statement because it was taken in contravention of his constitutional rights. The government responds that Rivera gave his statement willingly and voluntarily, was not coerced, and acknowledged that he was not threatened. *United States v. Reinholz*, 245 F.3d 765, 779–781 (8th Cir. 2001). We agree.

Police read Rivera his *Miranda* rights, and he acknowledged understanding of those rights. The record reflects that he fully understood the questions presented. The record does not show that he was either threatened or promised freedom in exchange for his cooperation. Rivera presents no facts consistent with coercion. Further, Rivera contends that police promised him leniency, but he makes no showing that his cooperation was not voluntary. Indeed, Rivera initiated much of the contact and conversation with the officers–he was eager to cooperate, and his free will was not overborne. We see no basis to support suppression of the evidence. Finding no constitutional infirmity, we affirm the district court's refusal to suppress Rivera's interview statement.

## C. *Court Appearance*

Rivera next takes issue with the time that elapsed before he was presented to a judicial officer for a probable-cause hearing. He asks us to suppress his statement and other evidence as a result of the alleged unreasonable delay in presenting him to a magistrate for a hearing on whether there was sufficient probable cause to justify his warrantless arrest.

A person taken into custody without a warrant is constitutionally guaranteed a hearing on the propriety of the warrantless arrest. The Fourth Amendment requires that a procedure exist whereby a judicial officer can make a "fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975). And, as noted by Rivera, we have previously concluded that even a time-period of two hours could be too long. In *United States v. Davis*, 174 F.3d 941 (8th Cir. 1999), Davis was in a holding cell

for two hours; no booking procedures were initiated; Davis was not finger-printed; and no police report was filed. We concluded that "Davis was detained for the sole purpose of investigating whether she had committed other criminal offenses," and not for the purpose of processing her on the arrest charges. *Id.* at 944–945.

However, unlike Davis, Rivera was taken to the county jail, formally booked, and finger-printed. Although he was subject to an overnight detention, this detention was reasonable considering his late-evening arrest and his desire to cooperate. This overnight stay allowed officers to consult with government attorneys regarding Rivera's expressed desire to cooperate with authorities. The record shows that Rivera chose to cooperate and that the detention was not a charade conducted for the sole purpose of investigating Rivera's other crimes. Accordingly, we find no constitutional violation and affirm the district court's suppression denial.

### D. *Acceptance of Responsibility*

Lastly, Rivera argues that the district court erred in its decision to deny an acceptance of responsibility reduction during sentencing. The burden of demonstrating–by affirmative conduct–that Rivera did indeed accept responsibility rests solely on Rivera. *United States v. Janis,* 71 F.3d 308, 310 (8th Cir. 1995). We will not disturb the district court's determination that Rivera failed to carry this burden unless it is clearly erroneous. *United States v. Arellano*, 291 F.3d 1032, 1034–35 (8th Cir. 2002).

Rivera claims that his willingness to enter a conditional plea and to waive his right to a jury trial established his entitlement to the two-level reduction. He argues that he did not contest the essential factual elements of his guilt, but put the government to its burden of proof solely to preserve his appeal rights for suppression of evidence. In fact, Rivera did admit–during his presentence interview–that he provided a pound of methamphetamine to McQuillan, that he knew it was going to be sold, and that he paid $5,000 for the methamphetamine and sold it for $6,500.

However, Rivera never stipulated to his conduct. Instead, he stipulated to the record of the motions and hearing in which he stated his confession was coerced. Further, Rivera notified the government of his decision to accept a bench trial one business day before his scheduled jury trial. Thus, the government had fully prepared its case and arranged witness travel. Also, Rivera did not stipulate to the authenticity of the methamphetamine. The government was required to offer a chemist's report into evidence to authenticate the drug. Rivera also continued to file motions in preparation for trial until the business day before trial.

Application note 2 to U.S.S.G. § 3E1.1. states, "In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to trial. This may occur for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.* to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct."

Rivera's single pre-trial statement contended that his confession was coerced and not voluntary. Rivera's other conduct, primarily requiring the government to prove its case at trial, is inconsistent with an acceptance of responsibility. Therefore, we affirm the district court's determination that Rivera failed to establish his entitlement to an adjustment under § 3E1.1.

For the foregoing reasons, the judgment of the district court is affirmed in all respects.

_____