# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1882

_____

United States of America

*Plaintiff - Appellee*

v.

Steven Sean Pile

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 15, 2016
Filed: April 11, 2016
[Published]

_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.

_____

PER CURIAM.

Steven Pile appeals the district court's[1] denial of his motion to suppress evidence that was obtained pursuant to a search warrant. We affirm.

_____

[1]The Honorable D.P. Marshall Jr., United States District Judge for the Eastern District of Arkansas.

## I. *Background*

In February 2013, Pulaski County law enforcement arranged for an undercover officer to purchase methamphetamine from Pile at his camper located at Willow Beach State Park campground near Scott, Arkansas. On the day of the arranged purchase, Lieutenant Jim Potter and other law enforcement officers set up surveillance of Pile's camper. A confidential informant introduced the undercover officer to Pile, but Pile refused to sell the undercover officer methamphetamine at that time. Instead, Pile wanted to postpone the meeting with the undercover officer and the informant.

Notwithstanding the failed drug sale, law enforcement decided to arrest Pile on known outstanding felony warrants. When two officers approached Pile outside of his camper, he ran. Once Pile was apprehended, the officers and Pile returned to the campsite, to an area approximately 15 feet from Pile's camper. After reading Pile his *Miranda* rights, Lieutenant Potter asked him whether there was anyone else at the campsite. Pile said that his friend was inside the camper. Lieutenant Potter approached the side door of the camper, walked up the stairs, opened the door and announced "Sheriff's Office," and looked through the opening of the doorway and saw an individual lying on the couch. Lieutenant Potter then opened the door further and shouted, "Sheriff's Office, hey." He asked the individual to exit the camper. As the individual was exiting, Lieutenant Potter—standing outside—noticed two glass pipes, commonly used to smoke methamphetamine, on a table inside the camper.

Subsequently, law enforcement sought a warrant based on Lieutenant Potter's observation of the pipes and Pile's postponed methamphetamine sale to the undercover officer. Law enforcement obtained a warrant to search the camper, and during the execution of the warrant, law enforcement uncovered the two glass pipes that Lieutenant Potter had seen as well as other drug paraphernalia, a handgun, and ammunition.

Pile moved to suppress the evidence obtained in the camper and any statements made following the search. The district court denied Pile's suppression motion. The district court held that the protective sweep exception set forth in *Maryland v. Buie*, 494 U.S. 325 (1990), applied to the facts. Specifically, the district court found that Lieutenant Potter lawfully approached the camper,[2] opened the door, and "look[ed] with trained eyes" and saw suspected drug paraphernalia—at least one of the glass pipes. The court concluded that the pipe and other background facts provided probable cause to support the issuance of the search warrant. Pile filed a motion to reconsider, but the district court denied the motion.

## II. *Discussion*

Pile argues that Lieutenant Potter's conduct violated the Fourth Amendment's prohibition of unreasonable searches and seizures. Pile criticizes the district court for applying the protective sweep exception. According to Pile, the exception does not cover Lieutenant Potter's conduct because the objective of Lieutenant Potter's search was to establish probable cause in order to obtain a search warrant. We review the district court's factual findings for clear error, but we review de novo its determination that the Fourth Amendment was not violated. *United States v. Pratt*, 355 F.3d 1119, 1121 (8th Cir. 2004).

The Fourth Amendment protects "the people . . . against unreasonable searches and seizures." U.S. Const. amend. IV. Generally, a warrantless search of a home is unreasonable. *United States v. Karo*, 468 U.S. 705, 717 (1984). There are, however, several limited exceptions to this general rule. *Id.* at 717–18. In *Buie*, the Supreme Court recognized a "protective sweep" as one such exception. 494 U.S. at 337. "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Id.* at 327. The sweep must be "narrowly confined to a cursory visual inspection of those places in which

_____

[2]The district court found that the camper was "Pile's home."

a person might be hiding." *Id.* And the sweep must be based on "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 334.

Lieutenant Potter did not violate Pile's Fourth Amendment rights when he opened the door to the camper, asked the individual inside to come out, and, in the process, observed contraband. Lieutenant Potter had reasonable suspicion to conduct the sweep based upon Pile's declaration that his friend was inside the camper. Nonetheless, Pile maintains that Lieutenant Potter searched for reasons unrelated to safety, and, thus, the search fell outside the scope of the protective sweep exception. Pile's point, even if true, would be immaterial. Just as with the probable-cause analysis, we ignore subjective considerations of law enforcement and instead objectively analyze the exception to the warrant requirement, "focusing on what a reasonable, experienced police officer would believe." *See United States v. Kuenstler*, 325 F.3d 1015, 1021 (8th Cir. 2003) (quotation and citations omitted). Given the unsecured, unknown individual inside the camper, a reasonable, experienced officer in Lieutenant Potter's position would be concerned with securing the arrest scene. Lieutenant Potter, or any other reasonable officer, would be justified in believing that the camper could "harbor[] an individual posing a danger to those on the arrest scene." *See Buie*, 494 U.S. at 334.

Pile also argues that Lieutenant Potter's conduct falls outside of *Buie* because he was already arrested and his arrest occurred outside of the camper. Neither reason undermines the lawfulness of Lieutenant Potter's search. "A protective sweep may be executed after an arrest if there is a reasonable possibility that other persons may be present on the premises who pose a danger to the officers." *United States v. Davis*, 471 F.3d 938, 944 (8th Cir. 2006). As we have already concluded, Lieutenant Potter was reasonable in believing that there was an individual inside the camper based on Pile's own words. Officers could reasonably have perceived the unknown individual

-4-

as a potential danger to those on the arrest scene. Finally, we have previously applied the protective sweep exception in similar situations, where an arrest occurs outside of a structure that officers subsequently search. *See, e.g.*, *id.* (search of a barn); *United States v. Brown*, 217 F.3d 605, 607 (8th Cir. 2000) (search of a home). Indeed, in *Buie*, the Court was concerned with dangers posed "to those *on the arrest scene*." 494 U.S. at 334 (emphasis added). Pile misreads *Buie*'s "in-home arrest" language. *See id.* at 337. To be sure, the arrest in *Buie* occurred inside of a home. But the rationale supporting the Court's recognition of the protective sweep—safety of police officers and others—may extend beyond a home's four walls, depending on the facts.

The district court did not err in applying the protective sweep exception to Lieutenant Potter's conduct and denying Pile's suppression motion.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____