# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2975

_____

United States of America

*Plaintiff - Appellant*

v.

Dylan Anthony Davis

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: September 27, 2019
Filed: November 27, 2019

_____

Before SMITH, Chief Judge, WOLLMAN and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Defendant/Appellee Dylan Davis was indicted on four counts of controlled substance and firearm offenses in the United States District Court for the Northern District of Iowa after police discovered marijuana and methamphetamine in a rental car in which Davis was a passenger. The district court granted Davis's motion to

suppress evidence found inside the car, finding Davis was detained without reasonable suspicion before an unlawful pretextual inventory. The United States appeals the district court's order granting Davis's motion to suppress. We have jurisdiction under 18 U.S.C. § 3731. Because we find Davis had no reasonable expectation of privacy in the vehicle, we reverse.

## I. Background

At 9:17 p.m. on November 29, 2017, Sergeant Michael Kober ("Sgt. Kober") of the Iowa State Patrol initiated a traffic stop of a sports utility vehicle ("SUV") near Onawa, Iowa for speeding. Accompanying Sgt. Kober was a civilian "ride along." Sgt. Kober approached the driver's side of the SUV and found two men inside: Noah Pope, the driver, and Dylan Davis, who was apparently asleep in the passenger seat. Sgt. Kober informed Pope and Davis that he had stopped the vehicle for speeding and asked both men for their licenses and the vehicle registration.

Pope told Sgt. Kober that they did not have a registration for the vehicle because it was a rental car. Pope also reported that the rental agreement was not in their possession and that a friend rented the car for them in Georgia. The car was due to be returned the next day and neither man was listed on the rental agreement. As Pope rummaged through his backpack in an attempt to locate his driver's license, Sgt. Kober saw several small baggies in Pope's backpack. Sgt. Kober observed that Pope was nervous, shaky, and breathing heavily and suspected that he was trying to hide a baggie from view. By now Davis was awake but did not appear to be nervous. Davis did not have a driver's license but later wrote identifying information on a piece of paper.

Sgt. Kober noticed a long gun case in the back of the SUV and asked what was inside. Davis responded, a "nine-millimeter," and gave Sgt. Kober permission to examine the weapon. Sgt. Kober opened the case and observed a loaded pistol.

When asked why he was traveling with a loaded weapon, Davis said he did not want to leave it in his own car at home. Sgt. Kober took the pistol, Pope's driver's license, and Davis's information to his patrol vehicle to request a check on each item from dispatch. Retrieving these items and examining the gun took about ten minutes. It took dispatch an additional six minutes to provide Sgt. Kober with verifications.

As they waited for dispatch Sgt. Kober told the "ride along" that he suspected Pope and Davis were either trafficking drugs or robbing banks. He also said that he would have the rental company tow the vehicle so he could perform an inventory search of the SUV. Sgt. Kober called the rental company for information on the SUV and to seek a tow request. His first call to the rental company went unanswered. A few minutes later Sgt. Kober was able to reach an automated phone system and was directed to a representative. This representative took some initial information, then placed Sgt. Kober on hold. After holding, another representative picked up, gave Sgt. Kober information about the rental agreement, and requested the vehicle be towed. It took ten minutes for Sgt. Kober to finish his call to the rental company.

Sgt. Kober issued Pope a speeding ticket and informed Pope and Davis that the car would be towed at the request of the rental company. Sgt. Kober asked Pope and Davis to exit the SUV and, with another officer, began to inventory the vehicle. Sgt. Kober found a glass pipe with methamphetamine residue under the driver's seat. He placed Pope and Davis under arrest and continued the search, which uncovered methamphetamine, marijuana, and more paraphernalia.

A federal grand jury indicted Davis on four counts related to the arrest: (1) conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; (2) possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2; (3) possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C.

§§ 2, 924(c)(1)(A) and 924(a)(2); and (4) unlawful transport of firearms in violation of 18 U.S.C. §§ 2, 922(g)(3), and 924(a)(2).

Davis moved to suppress evidence found in the rental car. The district court granted the motion, finding Davis was unconstitutionally seized when the traffic stop was extended without reasonable suspicion and the vehicle was searched pursuant to an unlawful pretextual inventory. The United States appeals the order granting suppression, arguing Davis lacks standing to challenge the SUV search and Sgt. Kober had probable cause to search the vehicle before the inventory. The United States does not appeal the district court's finding that the inventory was pretextual. Because we find Davis lacks standing, we need not reach the issue of whether Sgt. Kober had probable cause to search the SUV before the inventory.

## II. Discussion

"On appeal from a grant of a motion to suppress, we review a district court's findings of fact for clear error and its legal conclusions de novo." United States v. Horton, 863 F.3d 1041, 1046 (8th Cir. 2017) (cleaned up).

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. Fourth Amendment rights are personal and may not be asserted vicariously. Alderman v. United States, 394 U.S. 165, 174 (1969). Only those with a reasonable expectation of privacy in the place searched may bring a Fourth Amendment challenge. Minnesota v. Carter, 525 U.S. 83, 88 (1998). A passenger who asserts "neither a property nor a possessory interest" in a vehicle lacks a reasonable expectation of privacy in that vehicle. Rakas v. Illinois, 439 U.S. 128, 148 (1978). Even where a search is unlawful, a passenger without such an interest in the vehicle normally cannot challenge its search or suppress resulting evidence. United States v. Anguiano, 795 F.3d 873, 878-79 (8th Cir. 2015).

When Sgt. Kober stopped the SUV, Davis was in the passenger seat asleep and did not have a driver's license. He never asserted that he drove or was permitted to drive or exercise control over the SUV. As a passenger without a property or possessory interest, Davis did not have a reasonable expectation of privacy in the vehicle.

That said, Davis may still challenge the search if he was unreasonably seized during the traffic stop and the seizure caused an unlawful search. The district court found Sgt. Kober lacked reasonable suspicion to extend the stop. The district court held this unconstitutional seizure allowed Davis to challenge the SUV search on Fourth Amendment grounds. "We review de novo the question whether particular facts add up to reasonable suspicion." United States v. Linkous, 285 F.3d 716, 720 (8th Cir. 2002) (cleaned up).

A passenger may suppress evidence found in a vehicle when an unreasonably extended traffic stop causes the search. United States v. Peralez, 526 F.3d 1115, 1121 (8th Cir. 2008) (cleaned up); see also Brendlin v. California, 551 U.S. 249, 251, 263 (2007) (holding a passenger can be unreasonably seized during a traffic stop). A traffic stop is constitutionally limited to the time required to complete its purpose but may be extended due to an officer's reasonable suspicion of criminal activity. United States v. Riley, 684 F.3d 758, 763, 765 (8th Cir. 2012) (cleaned up). A reasonable suspicion is "some minimal, objective justification" for suspicion beyond an "inchoate hunch." United States v. Fuse, 391 F.3d 924, 929 (8th Cir. 2004) (cleaned up). We evaluate whether police had reasonable suspicion to extend a traffic stop based on the totality of the circumstances. United States v. Quintero-Felix, 714 F.3d 563, 567 (8th Cir. 2013) (cleaned up).

Davis asks us to compare this case to United States v. Peralez, where we found an unreasonable seizure after an officer extended an otherwise-routine traffic stop to repeatedly question occupants about drug trafficking and walk a canine around the

vehicle. 526 F.3d at 1117-19. In Peralez, the officer extended a stop beyond its original purpose without any indication of criminal activity. Id. at 1117. This stop is easily distinguishable and involves traditional bases of reasonable suspicion justifying an extension.

We have found a combination of nervous behavior and suspicious travel plans creates a reasonable suspicion justifying a traffic stop's extension. Riley, 684 F.3d at 763-64. In the protective vehicle search context, we have also found an occupant's furtive movement creates reasonable suspicion. United States v. Morgan, 729 F.3d 1086, 1090 (8th Cir. 2013). We have further found a third-party vehicle owner's absence contributes to a finding of reasonable suspicion. United States v. Olivera-Mendez, 484 F.3d 505, 510 (8th Cir. 2007). Like in those cases, Pope's nervousness, his apparent attempt to conceal a baggie, and the renter's absence were likely sufficient to justify extending the stop.

Within ten minutes of encountering Pope and Davis, Sgt. Kober observed behavior justifying suspicion. Pope had several small baggies in his backpack, one of which he appeared to try hiding from Sgt. Kober. Pope was extremely nervous. Neither Pope nor Davis was listed on the SUV's rental agreement, and the renter was not present. On those factors alone Sgt. Kober likely had more than a hunch Davis was involved in drug trafficking, but the presence of the loaded pistol convinces us that Sgt. Kober's suspicion was reasonable and the stop was not unlawfully extended.

Traveling in a vehicle with a loaded firearm is unlawful in Iowa. Iowa Code § 724.4(1) (2017). After finding the pistol Sgt. Kober likely had probable cause to search the SUV for evidence of criminal activity and he had, at a minimum, met the lower threshold of reasonable suspicion to extend the traffic stop. We find it significant that in addition to other indicia of drug trafficking—baggies, nervousness, and the uncertain rental situation—Sgt. Kober observed a violation of Iowa law and a strong indicator of drug trafficking when he found the loaded pistol. Davis's

explanation for taking the gun with him in a rental car across the country made little sense and provided an objective justification for suspicion. Sgt. Kober may have had probable cause to search the vehicle after finding the gun, or to arrest Davis for violating the Iowa weapons statute. See United States v. Brown, 217 F.3d 605, 607-08 (8th Cir. 2000) (finding probable cause under similar circumstances). We do not reach the issue of probable cause because extending the traffic stop was justified under the lower standard of reasonable suspicion.

There is no *per se* rule about the permissible length of a traffic stop extended by reasonable suspicion based on the mere passage of time. Instead, we find Sgt. Kober responded to objective bases of suspicion in a reasonable manner given the specific circumstances of this particular stop. Reasonable delays prevented Sgt. Kober from immediately verifying the passengers' information and the statuses of the gun and SUV to satisfy those suspicions. Under different circumstances a delay of this length or shorter could be unreasonable. Given the bases of suspicion in this particular case and the reasonable time and effort required to investigate them, we find Sgt. Kober lawfully extended this stop based on reasonable suspicion.

Because Sgt. Kober acted on a reasonable suspicion to extend the traffic stop, Davis was not unreasonably seized in violation of the Fourth Amendment. This leaves Davis without standing to challenge the pretextual inventory search. Because Davis lacks a reasonable expectation of privacy in the SUV as a passenger, he cannot assert a Fourth Amendment challenge to the vehicle search.

## III. Conclusion

For the foregoing reasons, we reverse the district court's order granting the motion to suppress.

_____